**BOUNTIFUL CITY, Plaintiff and Respondent,**

v.

**Luis Lee MAESTAS, Defendant and Appellant.**

**No. 890054–CA.**

Court of Appeals of Utah.

March 8, 1990.

D. Aron Stanton, Salt Lake City, for defendant and appellant.

Russell L. Mahan, Bountiful, for plaintiff and respondent.

Before DAVIDSON, BILLINGS and JACKSON, JJ.

DAVIDSON, Judge:

Defendant appeals his conviction of driving under the influence of alcohol in violation of Bountiful Traffic Code § 8-4-501. He raises four issues on appeal: (1) the arresting officer lacked reasonable suspicion to make the initial stop; (2) the intoxilyzer machine was improperly tested and rendered inaccurate results; (3) the affidavits required to demonstrate compliance with state standards for chemical breath analysis were inaccurate; and (4) the trial court failed to make the required findings before admitting the intoxilyzer affidavits. We reverse and remand.

On the afternoon of April 28, 1988, a Bountiful City patrolman was issuing a traffic citation on Main Street in Bountiful. During that stop, two separate citizens informed him that an apparent intoxicated person was observed at the Maverick Store asking directions to the Utah State Liquor Store. The citizens provided the officer with a description of the person's vehicle. After completing the Main Street traffic stop, the officer drove to the liquor store where he spotted a vehicle matching the description given by the citizens.

He pulled alongside the vehicle and "made contact with the driver." The defendant was sitting in the driver's seat with the motor running. After the initial contact, the driver identified himself by giving the officer his Utah driver's license. Soon after the initial contact and in the course of the subsequent conversation, the officer "detected a strong odor of alcohol coming from [defendant's] breath." He asked defendant if he would submit to field sobriety tests. Defendant agreed. The officer performed five separate tests and concluded that defendant had some difficulty repeating verbal commands and showed impaired coordination. After performing the tests, the officer arrested defendant. He was brought to the Bountiful Police Station where the arresting officer administered a breath intoxilyzer test. The test result indicated that defendant's blood alcohol content (BAC) was .129%.

## REASONABLE SUSPICION

Defendant first argues that the initial encounter was an illegal stop and seizure accomplished without reasonable suspicion and that the trial court erred by failing to suppress the evidence. He equates the initial encounter to a traffic stop. *See State v. Sierra*, 754 P.2d 972 (Utah Ct.App.1988). Defendant further argues that the officer was required to independently corroborate the private citizens' tips before stopping and detaining defendant. These arguments are without merit.

The Utah Supreme Court recognizes three levels of police encounters which are constitutionally permissible:

(1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop;" (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984), *cert.*

*denied,* 476 U.S. 1142, 106 S.Ct. 2250, 90 L.Ed.2d 696).

In this case, the initial encounter between the police officer and defendant falls into the first category. *See Layton City v. Bennett,* 741 P.2d 965, 967 (Utah Ct.App. 1987). The record shows that the police officer made the initial contact while defendant was sitting behind the wheel of a pick-up truck in the liquor store parking lot. The driver identified himself with a Utah driver's license. There is no evidence that the driver raised any objection to the officer's inquiry nor does it appear that defendant was detained against his will. *See Deitman,* 739 P.2d at 618. We have previously ruled that an initial encounter of this type is "not a seizure subject to fourth amendment protection." *Bennett,* 741 P.2d at 967.

It was only after the initial encounter, when the officer smelled alcohol on defendant's breath, that reasonable suspicion arose. *Id. See also* Utah Code Ann. § 77–7–15 (1982).[1] At that point the officer was justified in detaining defendant for a reasonable period of time to administer the field sobriety tests.

## VALIDITY OF AFFIDAVITS

### A. *Calibration and Test Results*

■ Defendant next argues that the calibration and testing of the intoxilyzer were deficient and violated state testing standards.[2] The defendant claims that the officer's affidavit describing the test results was inaccurate. He alleges that the police officer testing the machine checked a box indicating that the machine was equipped with a fixed absorption calibrator when the machine was not equipped with such a device.[3] The alleged inaccurate section of the affidavit reads as follows:

YES NO

(X) Fixed absorption calibrator test (if equipped)
(Reads within +/− .01 of calibration setting)  (X)  ( )

We find the affidavit to be confusing in that a yes answer could mean that the machine was equipped and tested or, alternatively, the machine was not equipped but that no mechanical malfunction existed rendering the machine inoperative. Similarly, a no check could indicate either the machine was not equipped with a fixed absorption calibrator or that the calibration setting did not comply with state testing standards.

The purpose underlying the state testing requirements is to guarantee that breath testing equipment functions properly and renders accurate results. *Murray City v. Hall,* 663 P.2d 1314, 1320 (Utah 1983). Here, the affidavit indicates that the intoxilyzer functioned properly. In the absence of evidence disclosing a defect, a yes check does not render the test results inaccurate.

### B. *Personal Knowledge*

■ Defendant next argues that the custodian affidavit and the intoxilyzer test record affidavit are inadmissible because the affiants testing the machine did not attest from their own personal knowledge. *See Hall,* 663 P.2d at 1320. *Hall* stated that affidavits proving the accuracy of breathalyzer equipment must "show on their face that the affiants ... attest from

---

1. Utah Code Ann. § 77–7–15 (1982) provides as follows:

   A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.

2. Utah Code Ann. § 41–6–44.3(1) (1988) expresses legislative standards for chemical breath analysis and delegates to the Commissioner of the Department of Public Safety, the authority to establish "standards for the administration and interpretation of chemical analysis of a person's breath, including standards of training."

3. The regulation outlining the fixed absorption calibrator check reads as follows:

   With the test card in the printer, run a test on the fixed absorption calibrator to see that the instrument gives the correct reading on the digital display and the printed test card. THIS CHECK NOT REQUIRED ON INSTRUMENTS NOT EQUIPPED WITH THE FIXED ABSORPTION CALIBRATOR.
   Utah Admin.Code R. 735–500–4(5) (1987–88)— Blood Alcohol Chemical Tests—"Procedure for Checking Calibration and Certification of Instruments."

their own personal knowledge." *Id.* We find that both affidavits comply with the personal knowledge requirements.

The breath testing supervisor signed his name to the custodian affidavit, listed the intoxilyzer serial number, and filled in the date upon which the test was completed. The custodian affidavit uses the term "I" indicating that the breath testing supervisor personally attested to the information contained in the affidavit. The second affidavit, which shows the intoxilyzer test record, also complies with the *Hall* requirements. The certified breath test technician personally signed the affidavit after performing the required tests.

### C. *Affirmative Findings*

■ Finally, defendant argues that the trial court's failure to make affirmative findings before admitting the affidavits is reversible error. We agree.

*Hall* listed the four affirmative findings the trial court must make pursuant to section 41–6–44.3 before admitting breathalyzer affidavits into evidence:

> (1) the calibration and testing for accuracy of the breathalyzer and the ampoules were performed in accordance with the standards established by the Commissioner of Public Safety, (2) the affidavits were prepared in the regular course of the public officer's duties, (3) that they were prepared contemporaneously with the act, condition or event, and (4) the "source of information from which made and the method and circumstances of

> their preparation were such as to indicate their trustworthiness."

*Hall,* 663 P.2d at 1320.

Evidence proffered under section 41–6–44.3 is a valid exception to the hearsay rule so long as a proper foundation for admission of the evidence is established. *Id.* A proper foundation for admission requires those affirmative findings to be made on the record. In *Hall,* the Utah Supreme Court stated as follows:

> We will not imply such findings, especially when the admission of evidence under § 41–6–44.3 intrudes upon an accused's constitutional right of confrontation.

*Hall,* 663 P.2d at 1320 n. 4.

Here, no such affirmative findings appear in the record. We note that the Bountiful City Attorney specifically asked the court to make the affirmative findings required by section 41–6–44.3, but the court deferred until defendant presented his evidence opposing admission of the affidavits. Later in the trial, however, the court admitted the affidavits without making the required findings.

Because no affirmative findings appear in the record as required by *Murray City v. Hall,* the judgment of the trial court is reversed and the case is remanded for a new trial.

BILLINGS and JACKSON, JJ., concur.