STATE of Utah, Plaintiff and Appellee,

v.

LeRoy Raymond JACKSON,
Defendant and Appellant.

No. 890546–CA.

Court of Appeals of Utah.

Dec. 11, 1990.

Rehearing Denied Jan. 16, 1991.

Karen Stam, Ronald S. Fujino (argued), Salt Lake Legal Defender Asso., Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., Dan R. Larsen (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and
JACKSON, JJ.

## OPINION

GARFF, Judge:

Leroy Jackson appeals his conviction of unlawful possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 1990), and possession of a controlled substance, a class B misdemeanor, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 1990). Defendant contends that, when the officer stopped his patrol car in front of defendant's parked vehicle, thus blocking it, his fourth amendment right to protection against unreasonable search and seizure was violated. Alternatively, defendant argues that, when the officer asked for his identification and driver's license, he was unlawfully seized. Defendant seeks reversal of the trial court's refusal to suppress the evidence seized as a result of the stop. We affirm.

We will not disturb the trial court's factual determinations underlying its decision to grant or deny a motion to suppress unless they are clearly erroneous. *State v. Smith*, 781 P.2d 879, 881 (Utah Ct.App.1989); *see State v. Walker*, 743 P.2d 191, 193 (Utah 1987). A finding is clearly erroneous if it is without adequate evidentiary support or is induced by an erroneous view of the law. *Hoth v. White*, 799 P.2d 213, 215 (Utah Ct.App.1990). We give due regard to the trial court's ability to observe the demeanor and judge the credibility of the witnesses. *Id;* Utah R.Civ.P. 52(a).

A fourth amendment analysis of police conduct is fact sensitive; thus, we review the facts in detail. *Smith*, 781 P.2d at 880. On May 24, 1989, Officer Hurst of the Salt Lake City Police Department observed defendant's vehicle traveling westbound on 1700 South in Salt Lake City. Suspecting that defendant's vehicle matched the description of a vehicle involved in a robbery, Hurst made a U-turn and followed defendant's vehicle for the purpose of running a license plate check.

Hurst made no attempt to stop defendant's vehicle. Before a license plate check could be performed, defendant pulled into a parking lot adjacent to the Foxy Lady Bar. Hurst followed defendant's vehicle into the parking lot. After parking his vehicle, defendant exited and approached Hurst's vehicle while it was still moving. Hurst then stopped his vehicle behind defendant's car, exited, and walked toward defendant. Hurst recognized defendant from a previous encounter and called defendant by his last name, but could not remember his first name. Upon Hurst's request for identification, defendant produced a Checkmart identification card with his name and picture on it. Because Hurst had often found Checkmart identification cards to be false, and because defendant had just been driving a vehicle, he asked defendant for his driver's license. Defendant responded that it had been taken. Hurst then asked for a vehicle registration. Defendant stated that he did not have it because he had only recently purchased the vehicle. After running a license plate and driver's license check, Hurst discovered that the license plate on defendant's vehicle was stolen and his driver's license had been suspended. Hurst placed defendant under arrest for possession of stolen property and driving on a suspended license. A subsequent search of defendant's person revealed two small tin foil bindles of cocaine and a marijuana cigarette.

## SEIZURE

The central inquiry of this case is whether defendant was seized before an articulable suspicion of criminal activity existed.

In *State v. Deitman*, 739 P.2d 616 (Utah 1987) (per curiam), the Utah Supreme Court acknowledged three levels of police encounters with the public that are constitutionally permissible:

(1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the

"detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed. *Id.* at 617–18 (quoting *United States v. Merritt,* 736 F.2d 223, 230 (5th Cir.1984)).

A first level stop, as described in *Deitman,* is a voluntary encounter where a citizen may respond to an officer's inquiries but is free to leave at any time. However, a seizure under the fourth amendment occurs when a reasonable person, in view of all the circumstances, would believe he or she is not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In *Mendenhall,* the Supreme Court cited circumstances that could indicate a seizure: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; or (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 554, 100 S.Ct. at 1877. The Court acknowledged that the constitution does not prevent a police officer from addressing questions to anyone on the street. *Id.* at 553, 100 S.Ct. at 1876. As long as the person "remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Id.* at 554, 100 S.Ct. at 1877.[1]

### A. Blocked Vehicle

■ Defendant claims that, when Hurst parked directly behind his car, a seizure occurred because defendant believed he was not free to leave. Defendant cites *State v. Smith,* 781 P.2d 879 (Utah Ct.App. 1989), where this court found that a seizure occurred when an officer followed Smith into a motel parking lot after Smith made a turn without signaling. The officer "blocked the defendant's car, got out of his marked police car to talk to defendant late at night, asked for defendant's license and registration, issued defendant a traffic citation and required defendant to remain while he did a warrants check and called a backup officer." *Id.* at 882. In *Smith,* this court noted that other jurisdictions have held that "when an officer blocks a defendant's vehicle, a seizure within the meaning of the fourth amendment has occurred even though the original stop was not initiated by the officer." *Id.* at 882 n. 3. *See People v. Guy,* 121 Mich.App. 592, 329 N.W.2d 435, 440 (1982) (although the initial stop of defendant's vehicle in a driveway was not the result of the officer's actions, his partial blockage of the driveway and subsequent visit to defendant's car clearly constituted a detention of the automobile and would be the equivalent of a police-initiated "stop"); *United States v. Kerr,* 817 F.2d 1384, 1386 (9th Cir.1987) (seizure occurred because it was not possible for defendant to drive around the officer's car and defendant stopped and exited his car primarily in response to the police officer's official appearance and conduct rather than of his own volition).

The above cases, holding that a police officer's blocking of another's vehicle constituted a seizure, are distinguishable from the case at hand. In the instant case, although the trial court found that Hurst had ultimately blocked defendant's car, the blocking did not occur until after defendant had exited his car of his own volition.

1. In *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, the defendant was approached by two agents of the Drug Enforcement Agency in an airport terminal. The agents identified themselves and asked to see her identification and airline ticket. She gave them her driver's license and airline ticket and answered several brief questions. When asked, she agreed to accompany the agents to an airport office where a body search was conducted which revealed contraband. In reviewing the circumstances of the arrest, the Court noted that: (1) the agents wore no uniforms, (2) the agents displayed no weapons, (3) the agents did not summon the defendant to their presence, and (4) the agents requested, but did not demand, the defendant's identification and ticket. *Id.* at 555, 100 S.Ct. at 1877. Consequently, the Court held that the defendant did not have any objective reason to believe that she was not free to end the conversation and proceed on her way.

Moreover, it was defendant's voluntary act that initiated the contact with Hurst, rather than Hurst's conduct. Defendant arrived at the parking lot to the Foxy Lady Bar not because Hurst was following him, but rather because he freely chose to go there. Defendant exited his vehicle and approached Hurst's vehicle while it was still moving. Defendant was free to walk to the bar or wherever he chose; he voluntarily chose to confront Hurst. This factual situation is similar to that in *Layton City v. Bennett*, 741 P.2d 965, 967 (Utah Ct.App. 1987), where a police officer followed defendant as he parked his truck at a construction site. Defendant exited his truck without any request by the officer, walked over to the police car as the officer was getting out, and freely initiated a conversation. We held it was a consensual, voluntary discussion and thus not a seizure subject to fourth amendment protection. Here, we also draw the same conclusion.

Defendant argues that it was Hurst's aggressive manner and show of authority that caused him to stop. Nothing in the record substantiates this argument. Hurst had not actuated his light bars, used his siren, nor had he driven in such a manner that would cause defendant to think he was required to pull over.

We agree with the trial court that, under the circumstances revealed in the record, a reasonable person would have believed that he or she was free to leave, notwithstanding the fact that his or her vehicle was blocked. Thus, we find no clear error in the trial court's finding that defendant's liberty was not restrained and that a seizure did not occur at this time.

### B. Request for Identification

■ Defendant argues in the alternative that, if a seizure did not occur when Officer Hurst's vehicle stopped behind his vehicle, a seizure did occur when Hurst asked for identification. The issue is whether, by posing this question, Hurst was detaining defendant against his will. We think not. In *United States v. Castellanos*, 731 F.2d 979, 982–83 (D.C.Cir.1984), the court stated that "[i]t is also well-set-

tled that the fourth amendment is not implicated by every encounter between police officers and citizens." The *Castellanos* court held that "as a matter of law, a request for identification cannot constitute a show of authority sufficient to convert an innocent encounter into a seizure. Only when police have in some way restrained the liberty of an individual, either by force or a show of authority, is there a 'seizure' within the meaning of the fourth amendment." *Id.* at 983. *See also Gomez v. Turner*, 672 F.2d 134 (D.C.Cir.1982); *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 n. 16 (1968); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

In *Castellanos*, the police responded to a call that a man was locked in his car, was unconscious and appeared to be ill or suffering from a drug overdose. Subsequent to defendant's car door being opened, a policeman asked defendant if he was all right. After defendant indicated he was all right, the police officer asked him for his driver's license and vehicle registration. Considering all the circumstances of the case, the court concluded that the presence of a police officer, together with a request for identification, would not have led a reasonable person to conclude that he or she was being compelled to respond and would not be free to leave. *Id.* at 983–84. The court further noted that the police officer's failure to inform the defendant that he need not respond to any questions did not convert what was a nonintrusive encounter at that point into a seizure. *Id.* at 984.

Similarly, in the instant case, absent a showing of force or coercion, Hurst's request for identification did not constitute a seizure. The trial court properly concluded that, in view of all the circumstances, a reasonable person in defendant's position would have believed he or she was free to leave because nothing in the record indicated that Hurst acted in a way that would lead a reasonable person to believe that he or she was compelled to produce identification, or that he or she could not freely walk away.

Defendant argues that *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357

(1979), stands for the proposition that the mere request for identification constitutes a seizure. We do not agree. *Brown* involved a Texas statute that makes it a criminal act to refuse to give one's name and address to an officer who has lawfully stopped a person and requested the information. Brown was stopped and then detained for refusing to identify himself. The Court held that a seizure occurred because defendant was detained for the purpose of requiring him to identify himself, not merely because he was asked for identification. *Id.* at 50, 99 S.Ct. at 2640. Obviously, Brown was compelled to identify himself and was not free to leave.

Applying the *Deitman* standard to the facts of this case, Hurst's request for identification did not constitute a seizure because defendant voluntarily initiated the contact and was free to go at any time and not answer Hurst's questions. When defendant produced a Checkmart identification card, it was reasonable for Hurst to ask for his driver's license because his past experience with Checkmart identification cards was unsatisfactory, and because defendant had just driven a vehicle. Defendant voluntarily provided the information that his license had been taken. At that point, Hurst had an articulable suspicion that a crime had been committed; that is, Hurst had seen defendant driving a vehicle without a license. Thus, a lawful seizure occurred at this time. After Hurst determined from the dispatcher that defendant's driver's license had been suspended and that the license plate was stolen, he had probable cause to make the arrest. Therefore, the cocaine and marijuana were taken from defendant's person by a search incident to a lawful arrest.

The trial court's findings of fact are not against the clear weight of the evidence. Nothing in the record indicates a seizure before an articulable suspicion of criminal activity arose.

BENCH, and JACKSON, JJ., concur.