**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael Larry BEAN, Defendant and Appellant.**

No. 930267–CA.

Court of Appeals of Utah.

Feb. 15, 1994.

Kendall S. Peterson, King & Isaacson, Salt Lake City, for defendant and appellant.

Virginia O. Christensen, Deputy Salt Lake County Atty., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, DAVIS and JACKSON, JJ.

## OPINION

BILLINGS, Presiding Judge:

Defendant Michael L. Bean appeals from a conditional guilty plea to possession or consumption of alcohol by a minor, in violation of Utah Code Ann. § 32A–12–209(1) (1991),[1] a class A misdemeanor, and unlawful possession of drug paraphernalia, in violation of Utah Code Ann. § 58–37a–5(1) (1990), a class B misdemeanor. On appeal, he challenges the trial court's order denying his motion to suppress. We affirm.

At roughly 2:50 a.m. on January 26, 1991, Deputy Schroeder was patrolling alone in a marked Salt Lake County Sheriff's vehicle. Ten minutes before encountering defendant and his companion, Deputy Schroeder heard a radio transmission from the Murray police indicating that they were looking for male suspects in the area of 4500 South State Street. Thereafter, Deputy Schroeder observed defendant and another individual walking slowly in front of a strip mall in that same general area. The businesses in the mall were closed.

Deputy Schroeder pulled in the driveway in front of defendant and his companion and exited his vehicle. The two walked towards Deputy Schroeder. Noticing that defendant "appeared to be very young," Deputy Schroeder suspected a curfew violation. When Deputy Schroeder asked defendant and his companion what they were doing, they responded they were walking to an open convenience store on the corner. During the conversation, Deputy Schroeder detected the smell of alcohol on defendant's breath. Deputy Schroeder asked for identification, which they both produced. Deputy Schroeder did a warrants check and discovered that defendant had an outstanding warrant. A second

sheriff's officer appeared on the scene within the first three minutes of the incident. After further conversation, defendant admitted to Deputy Schroeder that he had consumed alcohol. Deputy Schroeder then arrested defendant on the outstanding warrant and for consumption of alcohol by a minor. The entire encounter lasted about ten minutes. A search at the jail resulted in additional charges against defendant for unlawful possession of a controlled substance and unlawful possession of drug paraphernalia.

Defendant moved to suppress the evidence obtained at the time of his arrest, claiming that the officer's stop violated his right to be free from unreasonable searches and seizures. The court denied the motion. Defendant then entered conditional guilty pleas to two of the charges, specifically preserving his right to appeal the denial of his motion to suppress. On appeal, defendant argues that the denial of his motion to suppress must be reversed because: (1) the stop was more than a level one encounter and was not supported by reasonable suspicion; (2) his subsequent detention for questioning violated the Fourth Amendment; and (3) his stop and detention violated his right against unreasonable searches and seizures guaranteed by article I, section 14 of the Utah Constitution. The State responds that the initial encounter with defendant was a valid level one encounter and that his subsequent detention was supported by a reasonable suspicion of criminal activity.

## I. LEGALITY OF STOP

Defendant argues that Deputy Schroeder's original stop was a level two encounter, entitling him to Fourth Amendment protection against unreasonable searches and seizures. The trial court's ultimate determination of the level of a police stop is a legal conclusion which we review for correctness.[2]

---

1. This provision was amended, effective March 13, 1991.

2. In *State v. Thurman*, 846 P.2d 1256 (Utah 1993), recognizing a bifurcated standard of review of a trial court's determination of voluntary consent, the supreme court held that deference is to be given to findings of fact, but that ultimate conclusions of law are to be reviewed under a

correction of error standard. *Id.* at 1270–71 & n. 11. This court has previously noted "no analytical distinction among a trial court's determinations of when a seizure occurs, of reasonable suspicion, or of voluntary consent for purposes of the applicable standard of review." *State v. Carter*, 812 P.2d 460, 465 n. 3 (Utah App.1991). Therefore, we review for correctness the trial

The Utah Supreme Court has acknowledged three levels of police encounters with the public that are constitutionally permissible:

"(1) an officer may *approach* a citizen at anytime [sic] and pose *questions* so long as the citizen is not detained against his [or her] will; (2) an officer may *seize* a person if the officer has an 'articulable suspicion' that the person has committed or is about to commit a crime; however, the 'detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop'; (3) an officer may *arrest* a suspect if the officer has probable cause to believe an offense has been committed or is being committed."

*State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (emphasis added) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984), *cert. denied sub nom.* 476 U.S. 1142, 106 S.Ct. 2250, 90 L.Ed.2d 696 (1986)). "These demarcations are easy to list but often difficult to apply. Consequently, we must not only balance the competing interests of the individual and the State but also carefully consider the facts and circumstances of each particular case." *State v. Menke*, 787 P.2d 537, 540 (Utah App.1990).

■ A level one stop "is a voluntary encounter where a citizen may respond to an officer's inquiries but is free to leave at any time." *State v. Jackson*, 805 P.2d 765, 767 (Utah App.1990), *cert. denied*, 815 P.2d 241 (Utah 1991); *accord State v. Carter*, 812 P.2d 460, 463 (Utah App.1991), *cert. denied*, 836 P.2d 1383 (Utah 1992). "[A] seizure within the meaning of the fourth amendment does not occur when a police officer merely approaches an individual on the street and questions him, if the person is willing to listen." *State v. Trujillo*, 739 P.2d 85, 87–88 (Utah App.1987) (citing *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)). Such consensual, voluntary discussions between citizens and police officers are not seizures subject to Fourth

Amendment protection. *Jackson*, 805 P.2d at 768.

In contrast, a level two stop, or a seizure within the meaning of the Fourth Amendment, occurs when the officer " 'by means of physical force or show of authority has in some way restrained the liberty' " of a person. *United States v. Mendenhall*, 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1899 n. 16, 20 L.Ed.2d 889 (1968)); *accord Trujillo*, 739 P.2d at 87. "When a reasonable person, based on the totality of the circumstances, remains, not in the spirit of cooperation with the officer's investigation, but because he believes he is not free to leave a seizure occurs." *Trujillo*, 739 P.2d at 87. "The test for when the seizure occurred is objective and depends on when the person reasonably feels detained, not on when the police officer thinks the person is no longer free to leave." *State v. Ramirez*, 817 P.2d 774, 786 (Utah 1991); *accord Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877; *Jackson*, 805 P.2d at 767.

This court has recognized circumstances that, when considered in light of all other circumstances, tend to indicate a seizure has occurred: " 'the threatening presence of several officers, the display of a weapon by an officer, physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Trujillo*, 739 P.2d at 87 (quoting *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877).

It is helpful in this highly factual context to examine cases in which Utah courts have found level one stops, and compare them to our facts. In *Bountiful City v. Maestas*, 788 P.2d 1062 (Utah App.1990), this court found a level one stop under circumstances similar to the case at issue. Two separate citizens informed an officer that an intoxicated person was at a nearby store asking for directions to the Utah State Liquor Store, and

court's determination of the level of the police stop.

Furthermore, other courts have held that a trial court's ultimate determination of whether an encounter amounts to a seizure, i.e., what level the court determines the police stop to be,

under the Fourth Amendment, is a legal conclusion and thus have afforded no deference on appeal, but reviewed under a correction of error standard. *See, e.g., United States v. Maragh*, 894 F.2d 415, 417 (D.C.Cir.), *cert. denied*, 498 U.S. 880, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990).

provided the officer with a description of that person's vehicle. The officer drove to the liquor store, pulled alongside the defendant's vehicle, and made contact with the defendant, who was sitting in the driver's seat with the motor running. After the initial contact, the driver identified himself by giving the officer his driver's license. Soon thereafter and in the course of the subsequent conversation, the officer smelled alcohol on the defendant's breath. The officer asked the defendant if he would submit to field sobriety tests, to which the defendant agreed. After performing the tests the officer arrested the defendant. *Id.* at 1063.

On appeal, the court found the initial encounter between the officer and the defendant was a level one encounter.

> The record shows that the police officer made the initial contact while defendant was sitting behind the wheel of a pick-up truck in the liquor store parking lot. The driver identified himself with a Utah driver's license. There is no evidence that the driver raised any objection to the officer's inquiry nor does it appear that defendant was detained against his will. *See Deitman,* 739 P.2d at 618. We have previously ruled that an initial encounter of this type is "not a seizure subject to fourth amendment protection." *Layton City v. Bennett,* 741 P.2d 965, 967 (Utah App.1987).

*Id.* at 1064.

Again, in *State v. Deitman,* the officer responded to a burglar alarm and followed a truck he observed pull away from the scene. When the occupants exited, the officer called to them and asked if he could speak to them. They crossed the street to the officer's vehicle and presented identification on request. The officer requested a warrants check, which revealed an outstanding warrant against one of the defendants. *Deitman,* 739 P.2d at 617. In appealing their convictions, the defendants argued that the officer lacked probable cause for the initial stop and that the trial court thus erred in denying their motion to suppress. The court concluded the police encounter was a level one encounter. *Id.* at 618.

In *State v. Jackson,* this court held that a seizure did not occur when a police officer stopped his patrol car behind the defendant's parked car, thus blocking it, after the defendant had exited. The defendant walked to the officer's vehicle, where the officer asked him for identification. The court concluded that it was a level one encounter, because under the circumstances a reasonable person would have believed that he or she was free to leave. *Jackson,* 805 P.2d at 768. Further,

> "a request for identification cannot constitute a show of authority sufficient to convert an innocent encounter into a seizure. Only when police have in some way restrained the liberty of an individual, either by force or a show of authority, is there a 'seizure' within the meaning of the fourth amendment."

*Id.* (quoting *United States v. Castellanos,* 731 F.2d 979, 983 (D.C.Cir.1984)).

■ Based upon the preceding authority, we hold the trial court was correct in concluding the initial encounter between Deputy Schroeder and defendant qualifies as a level one stop. In response to an attempt to locate suspects, Deputy Schroeder pulled up alongside defendant and then stopped approximately ten feet in front of him. At the outset, Deputy Schroeder was the only officer present. He used no lights or sirens, and did not call out to defendant or tell him he must stay. Deputy Schroeder did not display his weapon, nor did he touch, restrain, or threaten defendant. He merely asked for defendant's identification. Consequently, we conclude that Deputy Schroeder's initial encounter with defendant was a level one stop and the Fourth Amendment was not implicated.

## II. DETENTION SUPPORTED BY REASONABLE SUSPICION

■ Defendant next argues that his pre-arrest detention violated the Fourth Amendment because Deputy Schroeder had no reasonable articulable suspicion of criminal activity to further detain and question him. Defendant does not challenge the trial court's findings of fact; rather, he attacks the trial court's conclusion that the officer had reasonable suspicion to further detain him. We review for correctness the trial court's con-

clusion that there was reasonable suspicion to detain defendant. *State v. Potter*, 863 P.2d 40, 41 (Utah App.1993); *State v. Hubbard*, 861 P.2d 1053, 1054 (Utah App.1993).

Defendant's pre-arrest detention was a level two stop which must be supported by reasonable suspicion.[3] *State v. Carter*, 812 P.2d 460, 465–66 (Utah App.1991); *State v. Trujillo*, 739 P.2d 85, 88 (Utah App.1987). Otherwise, the seizure violates the Fourth Amendment to the United States Constitution. *State v. Ramirez*, 817 P.2d 774, 786 (Utah 1991). The Utah Legislature has codified this second level of police-citizen interaction:

> A peace officer may stop any person in a public place when he [or she] has a *reasonable suspicion* to believe he [or she] has committed or is in the act of committing or is attempting to commit a public offense and may demand a name, address and an explanation of his [or her] actions.

Utah Code Ann. § 77–7–15 (1990) (emphasis added). "[T]he reasonable, articulable suspicion contemplated in § 77–7–15 must be based on objective facts suggesting that the individual may be involved in criminal activity." *State v. Menke*, 787 P.2d 537, 541 (Utah App.1990); *accord Trujillo*, 739 P.2d at 88.

This court has previously found that smelling alcohol on the breath of a defendant is an articulable fact supporting a finding of reasonable suspicion. *See, e.g., State v. Rochell*, 850 P.2d 480, 482 (Utah App.1993); *Bountiful City v. Maestas*, 788 P.2d 1062, 1064 (Utah App.1990). Deputy Schroeder articulated the following facts supporting an inference of criminal activity: (1) the lateness of the hour, (2) defendant's young appearance, and (3) the smell of alcohol on defendant's breath. Deputy Schroeder testified he suspected defendant was a minor from the outset, stating that "[w]hen I exited my patrol car, I could see that Mr. Bean looked youn-

ger." Noting the late hour, he suspected a curfew violation. Deputy Schroeder further testified that he noticed alcohol on defendant's breath "[i]mmediately when [he] began speaking with them."

Based upon these objective facts, Deputy Schroeder had a reasonable articulable suspicion that defendant had consumed alcohol and was a minor. After Deputy Schroeder determined from the dispatcher that defendant had an outstanding warrant, he had probable cause to make the arrest. Thus, defendant's Fourth Amendment rights were not violated.

## III. UTAH CONSTITUTION

■ Defendant next urges us to evaluate the stop and seizure under article I, section 14 of the Utah Constitution, claiming that the Utah Constitution provides greater protection against unreasonable searches and seizures than the Fourth Amendment. Consequently, he argues, the stop was illegal and the evidence obtained pursuant to that stop must be suppressed.

It is true that the Utah Supreme Court has "extended the protections afforded by the search and seizure provision of the Utah Constitution beyond that afforded by the analogous clause in the United States Constitution." *State v. Dunn*, 850 P.2d 1201, 1216 n. 11 (Utah 1993); *accord State v. Larocco*, 794 P.2d 460, 469–71 (Utah 1990). However, an appellate court can decline to address state constitutional claims under article I, section 14 if the party "fails to proffer any explanation as to how this court's analysis should differ" under this section from the federal counterpart. *State v. Roth*, 827 P.2d 255, 257 n. 1 (Utah App.1992). If a party fails to support his or her state constitutional arguments with analysis and legal authority

---

3. The State on appeal seems to concede that the encounter resulted in a level two seizure when Deputy Schroeder took defendant's identification and ran a warrants check. Because we conclude Deputy Schroeder had reasonable suspicion before he requested defendant's identification, we need not decide the issue of when a seizure, or level two encounter, occurred. However, we note that while an officer's taking of identification or car registration and running a warrants

check after the stop of an automobile have been found to constitute seizures, *State v. Godina-Luna*, 826 P.2d 652, 655 (Utah App.1992), *State v. Hansen*, 837 P.2d 987, 988 (Utah App.1992), an officer's taking of identification without a vehicle stop does not necessarily constitute a seizure. *See, e.g., State v. Deitman*, 739 P.2d 616, 618 (Utah 1987); *State v. Jackson*, 805 P.2d 765, 768 (Utah App.1990).

the appellate court will not address them. *State v. Carter,* 812 P.2d 460, 462 n. 1 (Utah App.1991).

In the instant case, defendant does not offer a specific analysis regarding how article I, section 14 should be read more broadly under either the circumstances of or the legal issues raised in this case. In sum, he offers no rationale as to why our analysis of the issues should diverge from the federal analysis. Instead, he merely relies upon general statements that Utah has a unique history and cites to cases from other contexts where the Utah Constitution has been interpreted differently from the United States Constitution. Accordingly, we do not engage in an independent state constitutional analysis under article I, section 14 of the Utah Constitution.

## CONCLUSION

Deputy Schroeder's initial stop of defendant was a level one encounter. This encounter escalated into a level two encounter only after Deputy Schroeder had reasonable suspicion to support further detention. Therefore, there was no violation of defendant's Fourth Amendment rights and we affirm the trial court's denial of his motion to suppress.

DAVIS and JACKSON, JJ., concur.