2006 UT App 489

**STATE of Utah, Plaintiff and Appellee,**

v.

**Aaron MERWORTH, Defendant and Appellant.**

**No. 20060354–CA.**

Court of Appeals of Utah.

Dec. 7, 2006.

---

Sharla M. Dunroe, Salt Lake City, for Appellant.

James M. Cope, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Aaron Merworth appeals from convictions of unlawful possession of a controlled substance, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2005), possession of drug paraphernalia, *see id.* § 58–37a–5(1) (2002), and possession of tobacco by a minor, *see id.* § 76–10–105 (2003). We affirm.

## BACKGROUND

¶ 2 On September 25, 2005, Officer Olsen and Officer Flores were patrolling the area around Liberty Park when they saw Defendant and four other males approach an intersection near the park. At the intersection,

three of the men sat on the curb while Defendant and one other male walked to a house down the street. When the Officers asked the men what they were doing, the three men stated that they were waiting for a friend while he used the bathroom. A few minutes later, Defendant and the other male came out of the house, at which time Officer Olsen casually asked Defendant, "Can I talk to you for a minute?" Defendant agreed and, when asked what he was doing, stated that he had just come from his house. At that stage, Officer Olsen falsely stated that the three men sitting on the curb had informed him that they had given Defendant money to purchase drugs from the house down the street. When first presented with this false accusation, Defendant stated, "I wasn't doing that." When presented again with the accusation, Defendant merely shrugged his shoulders. Officer Olsen thereafter asked Defendant if he had any drugs in his possession, to which Defendant responded that he had "a little marijuana."

¶ 3 Defendant was arrested and charged with unlawful possession of a controlled substance, *see id.* § 58–37–8(2)(a)(i), possession of drug paraphernalia, *see id.* § 58–37a–5(1), and possession of tobacco by a minor, *see id.* § 76–10–105. Defendant moved to suppress the evidence seized during the search of his person, including the marijuana and drug paraphernalia. The trial court denied the motion. Defendant then entered a conditional guilty plea to all charges, *see State v. Sery,* 758 P.2d 935 (Utah Ct.App.1988), and timely appealed.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 4 Defendant appeals the trial court's denial of his motion to suppress, arguing that his Fourth Amendment rights were violated because he was subjected to a level two stop unsupported by a reasonable articulable suspicion that he was engaged in criminal activity. The State, on the other hand, argues that Defendant's interaction with the police was nothing more than a level one encounter and therefore did not amount to a seizure under the Fourth Amendment. "On appeal from the denial of a motion to suppress, we review the trial court's factual findings for clear error." *Salt Lake City v. Ray,* 2000 UT App 55, ¶ 8, 998 P.2d 274.

However, because the determination of whether an encounter with law enforcement officers constitutes a seizure under the Fourth Amendment calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police, such determination is a legal conclusion that we review for correctness.

*Id.* (quotations and citation omitted); *see also State v. Gronau,* 2001 UT App 245, ¶ 9, 31 P.3d 601; *State v. Bean,* 869 P.2d 984, 985 (Utah Ct.App.1994).

## ANALYSIS

■ ¶ 5 There are generally three levels of constitutionally permissible encounters between law enforcement officers and the public:

(1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an articulable suspicion that the person has committed or is about to commit a crime ...; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*Ray,* 2000 UT App 55 at ¶ 10, 998 P.2d 274 (first alteration in original) (quotations and citation omitted); *see also State v. Deitman,* 739 P.2d 616, 617–18 (Utah 1987); *Bean,* 869 P.2d at 986; *State v. Jackson,* 805 P.2d 765, 766–67 (Utah Ct.App.1990).

■ ¶ 6 Our analysis here turns on whether Defendant's interchange with the police was a level one encounter or a level two stop.

A level one citizen encounter with a law enforcement official is a consensual encounter wherein a citizen voluntarily responds to non-coercive questioning by an officer. Since the encounter is consensual, and the person is free to leave at any point, there is no seizure within the meaning of the Fourth Amendment.

*State v. Hansen,* 2002 UT 125, ¶ 34, 63 P.3d 650 (internal citation omitted); *see also Bean,* 869 P.2d at 986 ("A level one stop is a

voluntary encounter where a citizen may respond to an officer's inquiries but is free to leave at any time.... Such consensual, voluntary discussions between citizens and police officers are not seizures subject to Fourth Amendment protection." (quotations and citation omitted)); *State v. Trujillo*, 739 P.2d 85, 87–88 (Utah Ct.App.1987) ("[A] seizure within the meaning of the [F]ourth [A]mendment does not occur when a police officer merely approaches an individual on the street and questions him, if the person is willing to listen. However, the person approached is not required to answer the officer's questions ...." (internal citation and footnote omitted)).

¶ 7 "In contrast, a level two stop, or a seizure within the meaning of the Fourth Amendment, occurs when the officer by means of physical force or show of authority has in some way restrained the liberty of a person." *Bean*, 869 P.2d at 986 (quotations and citation omitted); *see also Ray*, 2000 UT App 55 at ¶ 11, 998 P.2d 274; *Trujillo*, 739 P.2d at 87. Therefore, "a seizure occurs only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *State v. Struhs*, 940 P.2d 1225, 1227 (Utah Ct.App.1997) (quotations and citation omitted); *see also Ray*, 2000 UT App 55 at ¶ 11, 998 P.2d 274 ("[A] level one encounter becomes a level two stop and a seizure under the [F]ourth [A]mendment occurs when a reasonable person, in view of all the circumstances, would believe he ... is not free to leave." (quotations and citation omitted)); *Bean*, 869 P.2d at 986 ("When a reasonable person, based on the totality of the circumstances, remains, not in the spirit of cooperation with the officer's investigation, but because he believes he is not free to leave a seizure occurs." (quotations and citation omitted)); *Jackson*, 805 P.2d at 767; *Trujillo*, 739 P.2d at 87.

¶ 8 The distinction, therefore, between a level one encounter and a level two stop depends on whether, through an official show of physical force or authority, a reasonable person would believe that his freedom of movement is restrained. *See Struhs*, 940 P.2d at 1227. Even where, as here, a defendant did not attempt to leave, a seizure may be found where there was: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the defendant by an officer; or (4) the use of language or tone of voice that indicated that compliance with the officer's request might be compelled. *See Hansen*, 2002 UT 125 at ¶ 41, 63 P.3d 650; *Ray*, 2000 UT App 55 at ¶ 11, 998 P.2d 274; *Bean*, 869 P.2d at 986; *Jackson*, 805 P.2d at 767; *Trujillo*, 739 P.2d at 87.

¶ 9 Examining the factors delineated above, we believe that the encounter between the police and Defendant was consensual and voluntary. There were only two officers present, whereas five males were questioned. Defendant's interaction with the police began when Officer Olsen asked Defendant if he could talk to him for a minute. Defendant replied "sure" and approached Officer Olsen from three houses away. Once there, Defendant readily answered questions about what he had been doing and openly admitted that he had "a little marijuana" when asked if he had any drugs in his possession. Quite simply, there were not several officers present, and the officers' presence certainly was not threatening. Furthermore, the language used by both Defendant and Officer Olsen suggests that the encounter was consensual and voluntary. And there is nothing in the record that indicates that either officer displayed a weapon, touched Defendant, or used an intimidating or even stern tone of voice. We therefore agree with the trial court that "a reasonable person would have felt free to leave." [1]

1. The Utah Supreme Court's recent decision in *State v. Alverez*, 2006 UT 61, 147 P.3d 425, is factually distinguishable from the present case. In *Alverez*, a level two encounter occurred because two uniformed police officers "waited for and then surprised" the defendant in a residential parking lot and immediately asked him questions that were "accusatory in nature." *Id.* at

¶ 12. The facts in *Alverez* created a "confrontational encounter" sufficient to constitute a level two Fourth Amendment seizure. *Id.* The only relevant similarity between this case and *Alverez* is Officer Olsen's misrepresentation, which amounted to an indirect accusation. As we have said, none of the factors supporting a level two encounter exist here; and a misrepresentation,

¶ 10 Defendant argues that his encounter with the police constituted a level two stop because "Officer Olsen engaged in threatening and offensive conduct when he accused [Defendant] of being a drug distributor." *See Salt Lake City v. Ray*, 2000 UT App 55, ¶ 14, 998 P.2d 274 ("[A]n encounter becomes a seizure if the officer engages in conduct which a reasonable [person] would view as threatening or offensive even if performed by another private citizen." (second alteration in original) (quotations and citation omitted)). During the encounter with Defendant, Officer Olsen falsely stated that the three men sitting on the curb informed him that they had given Defendant money to purchase drugs from the house down the street. In response, Defendant initially stated, "I wasn't doing that," and later shrugged his shoulders.[2] Shortly thereafter, Defendant admitted to having marijuana in his possession. Defendant now contends that he was subjected to a level two stop because Officer Olsen's misrepresentations were "offensive" and led Defendant to believe that he was not free to leave. However, "[a] defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is." *State v. Galli*, 967 P.2d 930, 936 (Utah 1998) (alteration in original) (quotations and citation omitted); *see also State v. Bunting*, 2002 UT App 195, ¶¶ 16–20, 51 P.3d 37; *State v. Gronau*, 2001 UT App 245, ¶¶ 23–26, 31 P.3d 601 (holding no seizure occurred even though police openly accused defendant of possessing drugs). We therefore hold that Defendant's encounter with the police was a level one encounter despite Officer Olsen's misrepresentations.

## CONCLUSION

¶ 11 Defendant's convictions of unlawful possession of a controlled substance, posses-sion of drug paraphernalia, and possession of tobacco are affirmed.

McHUGH, Judge, (concurring):

¶ 12 I write separately to indicate that although I agree with the dissent concerning the relevance of the Utah Supreme Court's recent decision in *State v. Alverez*, 2006 UT 61, I believe the facts of this case are distinguishable for reasons not addressed in the main opinion. I do not believe the *Alverez* court intended to create a per se rule that accusatory questioning will always create a level two encounter. Rather, the supreme court held that "[u]nder the circumstances in [*Alverez*], where two uniformed police officers waited for and then approached [d]efendant and accused him of not one, but two illegal acts—lack of car insurance and drug trafficking—a reasonable person would not have felt free to leave." *Id.* at ¶ 11. Considering both the nature of the questioning in this case and the totality of the circumstances, I agree with the main opinion that Defendant reasonably would have believed he was free to leave.

¶ 13 Although both *Alverez* and this case involve police questioning of an accusatory nature, the factual settings are different enough to justify disparate conclusions as to the level of the encounter. In *Alverez*, two uniformed and armed police officers concealed themselves behind a van parked next to Alverez's car. *See id.* at ¶ 4. They then surprised and confronted Alverez about his vehicle being uninsured and their belief that he was dealing drugs, eventually wrestling with him and causing him to spit out balloons of cocaine and heroin. *See id.* at ¶¶ 4–6. The Utah Supreme Court did not rely only on the accusatory nature of the questions posed to Alverez. Instead, it noted that

---

without more, is insufficient to establish a level two encounter. *See State v. Galli*, 967 P.2d 930, 936 (Utah 1998); *State v. Gronau*, 2001 UT App 245, ¶¶ 23–26, 31 P.3d 601. Thus, under the totality of the circumstances, a reasonable person would have felt free to leave. *See State v. Jackson*, 805 P.2d 765, 767 (Utah Ct.App.1990).

**2.** The fact that Defendant shrugged his shoulders in response to Officer Olsen's accusations of drug dealing is further evidence that the encounter between Defendant and the police was a level one encounter. *See State v. Trujillo*, 739 P.2d 85, 87–88 (Utah Ct.App.1987) ("[A] seizure within the meaning of the [F]ourth [A]mendment does not occur when a police officer merely approaches an individual on the street and questions him, if the person is willing to listen. However, the person approached is not required to answer the officer's questions ...." (internal citation and footnote omitted)).

these questions "originated from a pair of uniformed police officers who waited for and then surprised Defendant alone in a residential parking lot." *Id.* at ¶ 12. Furthermore, to leave the scene, Alverez would have had to walk past the officers and enter the vehicle he admitted was uninsured.

¶ 14 Here, Defendant was neither alone nor surprised. There were five suspects and two police officers. Only one of those officers engaged in the encounter with Defendant. The officer asked permission to speak with Defendant when he was still approximately three houses away. Defendant voluntarily agreed to the encounter and walked to the officer to facilitate the discussion. Rather than being outnumbered in a residential parking lot and needing to proceed past the officers to leave the scene by car, Defendant could simply have turned around and walked back to the house from which he had emerged. Under the totality of the circumstances, I concur with the main opinion that this case involves a level one encounter and that, therefore, the decision of the trial court should be affirmed.

THORNE, Judge, (dissenting):

¶ 15 I respectfully dissent from the majority opinion in this matter. The Utah Supreme Court's recent opinion in *State v. Alverez*, 2006 UT 61, 147 P.3d 425, held that accusatory questioning can elevate a consensual encounter with police into a level two detention. *See id.* at ¶¶ 10–12. Because I conclude that the facts of Defendant's encounter with the police are functionally indistinguishable from the facts of *Alverez*, I conclude that Defendant was subject to a level two detention. The State has not established that the police officers had a reasonable suspicion that Defendant was engaged in criminal activity, and thus, I would find his detention to be a violation of the Fourth Amendment. *See Salt Lake City v. Ray*, 2000 UT App 55, ¶ 10, 998 P.2d 274 (stating that "an officer may seize a person if the officer has an articulable suspicion that the person has committed or is about to commit a crime" (quotations and citation omitted)).

¶ 16 In *Alverez*, police suspected Alverez of trafficking drugs and believed that he would be visiting a particular condominium complex at a certain time of day. *See Alverez*, 2006 UT 61 at ¶¶ 3–4, 147 P.3d 425. They waited there for Alverez and observed him arrive and enter the complex. *See id.* at ¶ 4. The officers then exited their vehicle and concealed themselves behind a van parked next to Alverez's car. *See id.*

> When [Alverez] returned to his car less than five minutes later, just as he had done the day before, Officers Wahlin and Steed approached him from behind the van.
>
> Officer Wahlin first asked [Alverez] whether he knew that his vehicle was uninsured, to which [Alverez] replied, "How'd you know that?" Officer Wahlin then explained to [Alverez] that the vehicle was suspected of being connected to drug dealing. [Alverez] denied any knowledge of drug dealing.

*Id.* at ¶¶ 4–5. Shortly thereafter, the officers recovered drugs that Alverez had concealed in his mouth, leading to Alverez's arrest and conviction. *See id.* at ¶¶ 5–7.

¶ 17 The supreme court held that Alverez had been subjected to a level two stop: "Under the circumstances in this case, where two uniformed police officers waited for and then approached [Alverez] and accused him of not one, but two illegal acts—lack of car insurance and drug trafficking—a reasonable person would not have felt free to leave." *Id.* at ¶ 11. The court explained that accusatory questioning can, in some circumstances, elevate a consensual encounter into a level two detention:

> [W]e think the manner of questioning, the content of the questions, and the context in which the questions are being asked can convert "mere questioning" into a level two seizure if, under all of the circumstances, a reasonable person would not feel free to leave. In this case, the officers' inquiries exceeded "mere questioning" and created a confrontational encounter. The questions "[d]id you know your car was uninsured?" and "[d]id you know your car is suspected as being involved in drug dealing?" were accusatory in nature. These questions, which originated from a pair of uniformed police officers who waited for and then surprised [Alverez] alone in a residential

parking lot, would not leave a reasonable person with the impression that he was free to disregard the questions, get in his car, and drive away. The accusatory nature of the questions and the context in which they were asked demonstrated a "show of authority" sufficient to restrain [Alverez]'s freedom of movement.

*Id.* at ¶ 12 (second and third alteration in original) (footnote omitted).

¶ 18 The facts of Defendant's encounter with police are strikingly similar to those in *Alverez.* Like Alverez, Defendant entered a building for a short period of time and exited the building to find two uniformed police officers waiting for him. Defendant was startled to see the police, and when one of the officers asked to speak with him he replied affirmatively.[1] After initially asking Defendant what he was doing, the officer immediately told Defendant that Defendant's friends had told the officer that Defendant had gone in the house to get them drugs. When Defendant denied this accusation, the officer elaborated that "[t]hey told me that they gave you money and you were suppose [sic] to bring them back some drugs."

¶ 19 Although there are minor factual differences between the two encounters, I see no meaningful distinction between either the context or the questioning presented by Defendant's encounter in comparison to Alverez's. In both cases, a citizen made a brief visit to a building and exited to be surprised by multiple police officers.[2] In both cases, the police accused the citizen of a serious crime, drug trafficking. The other facts distinguishing the two cases are insufficient to convince me that Alverez was detained under these circumstances but that Defendant was not.[3]

¶ 20 I conclude that *Alverez* is determinative here despite the other cases cited by the majority opinion. Two of the three cases relied upon by the majority address accusatory questioning in the context of coerced confessions. *See State v. Galli,* 967 P.2d 930 (Utah 1998); *State v. Bunting,* 2002 UT App 195, 51 P.3d 37. The standard in coerced confession cases requires that a defendant's free will be overcome, *see Bunting,* 2002 UT App 195 at ¶ 14, 51 P.3d 37, a standard that is much higher than the standard in seizure cases, which requires merely the reasonable belief that one is not free to leave. The only seizure case cited by the majority is *State v. Gronau,* 2001 UT App 245, 31 P.3d 601, a case from this court in which the accusation of drug transportation was, at most, tangential to the analysis. *See id.* at ¶ 24. In any event, *Alverez* is newly binding authority in the context of seizure determinations, overruling any inconsistent aspect of *Gronau,* and I believe that we are obligated to employ its analysis.[4]

1. Officer Olsen testified that "[j]ust as soon as we saw him I actually asked him if I could speak with him."

2. The concurring opinion places great weight on the different number of officers and civilians present in this case and in *State v. Alverez,* 2006 UT 61, 147 P.3d 425. Although I agree that the ratio of officers to civilians at any given questioning is a relevant circumstance in determining the level of the encounter, it seems to be a relatively minor detail in the circumstances of this case. One officer, or twenty, still represents the entire power of the State, and if a single officer communicates to a large crowd that they are not free to leave, then the entire crowd is subject to a level two detention. In this case, one of two officers present clearly accused Defendant of having just committed a felony offense. I would hold that this accusation, and the surrounding circumstances, subjected Defendant to a level two detention despite the presence of Defendant's companions. *See id.* at ¶¶ 11–12.

3. For example, I see no significance to the fact that Alverez may have been reluctant to leave the scene in his uninsured vehicle, as suggested by the concurring opinion. Alverez, like Defendant in this case, could have avoided the police by simply returning to the building from which he had just exited. However, after the police accused him of criminal activity, he no longer reasonably believed that he could do so.

4. I also take issue with footnote two of the majority opinion, which interprets Defendant's shoulder-shrugging in response to an accusation of drug-dealing to be evidence of a level one encounter. To the extent that the majority interprets Defendant's response as an indication of his subjective belief that he was not being detained, it is irrelevant, as the standard for determining detention is an objective one. *See State v. Struhs,* 940 P.2d 1225, 1227 (Utah Ct.App.1997). To the extent that the majority interprets *State v. Trujillo,* 739 P.2d 85, 87–88 (Utah Ct.App.1987) as *requiring* citizens to answer police questions in a level two encounter, this is not a complete

¶ 21 In this case, "[t]he accusatory nature of the questions and the context in which they were asked demonstrated a 'show of authority' sufficient to restrain Defendant's freedom of movement." *State v. Alverez*, 2006 UT 61, ¶ 12, 147 P.3d 425 (quoting *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Accordingly, Defendant was subject to a level two detention, which requires reasonable suspicion on the part of the police. *See Salt Lake City v. Ray*, 2000 UT App 55, ¶ 10, 998 P.2d 274. Because the State has not demonstrated that reasonable suspicion existed here, I would reverse the district court's denial of Defendant's motion to suppress and remand this matter for Defendant to pursue the withdrawal of his conditional guilty plea. *See State v. Sery*, 758 P.2d 935 (Utah Ct.App. 1988).

statement of the law. *See, e.g., Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 187, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) ("[A] suspect detained during a *Terry* stop is not obliged to respond to questions." (quotations omitted)).