STATE of Utah, Plaintiff and
Respondent,

v.

Joseph Greg TRUJILLO, Defendant
and Appellant.

No. 860203–CA.

Court of Appeals of Utah.

June 19, 1987.

Rehearing Denied July 13, 1987.

Kendall Peterson, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra Sjogren, Asst. Atty. Gen., for plaintiff and respondent.

OPINION

Before Judges BILLINGS, JACKSON, and ORME.

BILLINGS, Judge:

Joseph Greg Trujillo ("Trujillo") appeals from his conviction of possession of a dangerous weapon by a restricted person, a third degree felony. Utah Code Ann. § 76–10–503 (1978). Trujillo contends the police officer's search of his person and seizure of the weapon were unreasonable in violation of the fourth amendment.[1] We reverse and remand.

---

1. On appeal Trujillo limits his arguments to the    federal Constitution. He fails to brief the issues

Because a determination of the reasonableness of the police conduct is highly factual in nature, we review the facts in detail. During the early morning hours of February 28, 1986, Officer Beesley was driving his marked police car on routine patrol between 300 and 400 South on State Street in Salt Lake City. Several "car prowls" had been reported in this vicinity in the prior weeks; however, Officer Beesley could not recall receiving information that any "car prowls" or other criminal activity had been reported in the area on this particular morning.

At approximately 3:30 a.m., Officer Beesley observed Trujillo and two companions walking slowly and peering into business windows on the west side of State Street. At one point, he noticed the trio stop and stare at a poster located outside an adult theater. The trio, nonetheless, steadily progressed southbound on State Street. Officer Beesley stopped his car at the curb and observed the trio. He focused on a nylon knapsack Trujillo carried at his side. Officer Beesley saw Trujillo shift this knapsack from his side to his front in what Officer Beesley considered an effort to conceal it. Officer Beesley did not see the trio violate any traffic ordinances or engage in any criminal behavior.

Officer Beesley radioed dispatch stating he was going to be *"shaking and talking to some individuals"* and requested back-up assistance. (Emphasis added). Officer Beesley then pulled his police car to the curb at 400 South State Street, got out, and walked toward the trio. Trujillo and his two companions stood on the corner. Trujillo placed the knapsack next to a garbage can located on the corner in what Officer Beesley regarded as an effort to "stash it." As Officer Beesley approached, the trio walked towards him. No one made any attempt to flee. Officer Beesley asked the trio what they were doing, their names, and for identification. Although the three appeared "nervous," they responded to Officer Beesley's inquiries. Only one of the

three actually produced identification but all three gave Officer Beesley their correct names. Trujillo explained the three were enroute to his cousin's house. Officer Beesley made no further inquiries of Trujillo concerning the "suspicious" knapsack.

At this time, the back-up officer arrived. Officer Beesley then took hold of Trujillo, told him to place his hands on the patrol car and spread his feet, and patted down the outer surfaces of Trujillo's clothing. The search revealed an 8" to 10" knife strapped to Trujillo's chest. Trujillo subsequently was arrested for possession of a dangerous weapon by a restricted person[2] in violation of Utah Code Ann. § 76–10–503 (1978).

Trujillo filed a motion to suppress the knife confiscated during the search arguing his detention and the subsequent search of his person violated his fourth amendment rights against unreasonable searches and seizures. At the suppression hearing, Officer Beesley testified that his initial detention of Trujillo was based upon four factors: (1) it was a high-crime area; (2) the lateness of the hour; (3) the apparent nervous conduct of the trio; and, (4) the "suspicious" nylon knapsack Trujillo carried. Officer Beesley did not explain why he found the knapsack "suspicious." Officer Beesley further testified that his search of Trujillo was based upon his "intuition." The trial court denied Trujillo's motion to suppress the knife. The parties then submitted the case to the court on the facts elicited at the suppression hearing. The trial court found Trujillo guilty of possession of a dangerous weapon by a restricted person and sentenced him to the Utah State Prison. This appeal followed.

The issue on appeal is whether Officer Beesley's seizure and subsequent search of Trujillo violated Trujillo's fourth amendment rights against unreasonable searches and seizures. Although the trial judge is in the best position to determine the reasonableness of the conduct under the par-

under Utah's Constitution. Therefore, our analysis focuses exclusively on the federal Constitution.

2. It is undisputed that Trujillo was on parole for a previous felony conviction and thus a "restricted person."

ticular facts of each case, *see State v. Houser*, 669 P.2d 437, 439 (Utah 1983) (per curiam), we must correct errors in the application of the law to these facts. *See State v. Swanigan*, 699 P.2d 718, 719 (Utah 1985) (per curiam).

## I.

The fourth amendment provides that people have the right to be secure in their persons against unreasonable searches and seizures. U.S. Const. Amend. IV. Accordingly, it functions to "prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (citations omitted).

On the other hand, the law recognizes the government has a legitimate interest in crime prevention and detection. Balancing these principles, the United States Supreme Court has found that a police officer, in appropriate circumstances and in an appropriate manner, may approach a person for purposes of investigating suspected criminal behavior even though there is not probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). At the same time, however, the Court has emphasized that these brief investigatory detentions are a source of friction between the police and minority groups. *Id.* at 14, n. 11, 88 S.Ct. at 1876, n. 11.

Thus, in considering the constitutionality of Trujillo's seizure, we must weigh the competing and often conflicting interests between the rights of individuals to be free from unnecessary harassment or arbitrary interference from law officers, and the interest of the public in being protected from crime. *State v. Lopes*, 552 P.2d 120, 122 (Utah 1976) (Maughan, J., concurring) (footnote omitted); *see Terry*, 392 U.S. at 21, 88 S.Ct. at 1879 (citation omitted).

## II.

▪ The search and seizure limitations of the fourth amendment apply to "investigatory stops" or "seizures" that fall short of official arrests. *Terry*, 392 U.S. at 16–17, 88 S.Ct. at 1877. A seizure within the meaning of the fourth amendment occurs only when the officer by means of physical force or show of authority has in some way restricted the liberty of a person.[3] *Mendenhall*, 446 U.S. at 553, 100 S.Ct. at 1876 (citing *Terry*, 392 U.S. at 19, n. 16, 88 S.Ct. at 1879, n. 16). When a reasonable person, based on the totality of the circumstances, remains, not in the spirit of cooperation with the officer's investigation, but because he believes he is not free to leave a seizure occurs. *Id.* at 544, 555, 100 S.Ct. at 1870, 1877.

The United States Supreme Court has illustrated situations which may result in a "seizure":

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1877 (citations omitted).

▪ In contrast, a seizure within the meaning of the fourth amendment does not occur when a police officer merely approaches an individual on the street and

---

**3.** A majority of the United States Supreme Court has been unable to agree on the precise parameters of when a "seizure" occurs in "stop and frisk" situations. *See Immigration and Naturalization Service v. Delago*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

The Utah Supreme Court, although it has recently dealt with cases involving police detention of citizens in public places, has not engaged in any detailed analysis to pinpoint when a "seizure" occurs. *See, e.g., State v. Swanigan*, 699 P.2d 718 (Utah 1985) (per curiam); *State v. Whittenback*, 621 P.2d 103 (Utah 1980).

questions him, if the person is willing to listen. *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (citations omitted).[4] However, the person approached is not required to answer the officer's questions, *Id.* at 498–99, 103 S.Ct. at 1324–25; *Mendenhall,* 446 U.S. at 555, 100 S.Ct. at 1877, and his refusal to listen to the officer's questions or answer them, without more, does not furnish reasonable grounds for further detention. *Royer,* 460 U.S. at 499, 103 S.Ct. at 1325.

In light of the foregoing principles, we must determine "if" and "when" Officer Beesley "seized" Trujillo. If there has been no seizure within the meaning of the fourth amendment, then no constitutional rights have been infringed. *Id.*

■ We cannot ascertain from the record whether a seizure subject to the fourth amendment occurred prior to Officer Beesley's pat-down search of Trujillo and we thus assume that up to that point no intrusion upon Trujillo's constitutionally protected rights occurred. *See Terry,* 392 U.S. at 19, n. 16, 88 S.Ct. at 1879, n. 16. There can be no question, however, that Officer Beesley "seized" Trujillo within the meaning of the fourth amendment when he took hold of him, told him to place his hands on Beesley's patrol car and spread his feet, and patted down the outer surfaces of Trujillo's clothing. The officer's conduct is clearly within the parameters outlined by the Supreme Court in *Terry* and in *Mendenhall.*

### III.

Having determined that Trujillo was "seized" within the meaning of the fourth amendment, we must determine if the seizure was constitutional. In order to justify this seizure, Officer Beesley must point to specific, articulable facts which, together with rational inferences drawn from those facts, would lead a reasonable person to conclude Trujillo had committed or was about to commit a crime. *Royer,* 460 U.S.

at 499, 103 S.Ct. at 1325; *Terry* 392 U.S. at 21, 88 S.Ct. at 1879; *State v. Christensen,* 676 P.2d 408, 412 (Utah 1984).

As the United States Supreme Court stated in *Terry:*

And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a [person] of reasonable caution in the belief" that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. And simple " 'good faith on the part of the arresting officer is not enough.'...."

*Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–80 (citations omitted).

Utah has codified this constitutionally mandated "reasonable suspicion":

A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand a name, address and an explanation of his actions.

Utah Code Ann. § 77–7–15 (1982). Under this statute, a "brief investigatory stop of an individual by police officers is permissible when the officers 'have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *State v. Carpena,* 714 P.2d 674, 675 (Utah 1986) (quoting *State v. Swanigan,* 699 P.2d 718, 719 (Utah 1985)); *State v. Christensen,* 676 P.2d 408, 412 (Utah 1984).

We acknowledge that a trained law enforcement officer may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer. *Mendenhall,* 446 U.S. at 564, 100 S.Ct. at 1882. The officer is enti-

---

**4.** In certain circumstances, police detention of a person to question *may* constitute a seizure within the meaning of the fourth amendment. *State v. Christensen,* 676 P.2d 408, 412 (Utah

1984) (citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)).

tled to assess the facts in light of his experience. *Id.* at 565, 100 S.Ct. at 1883.

These general principles are best understood by a comparison of controlling cases which have found a street detention either reasonable or unreasonable under the fourth amendment.

In *Terry,* the police officer, while patrolling in plain clothes in downtown Cleveland at approximately 2:30 in the afternoon, observed two men hovering on a street corner for an extended period of time. The officer, who had patrolled this neighborhood for thirty years, observed the two men pace alternately along an identical route pausing to stare in the same store window 24 times. Each completion of this route was followed immediately by a conference between the two men on the corner. The Court found the officer's conclusion that the men were about to stage a daylight robbery was based on articulable objective grounds and upheld his "stop and frisk" under the fourth amendment.

In *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), two patrol officers observed Brown and another person in daylight walking away from one another in an alley frequented by drug dealers. The officers stopped and asked Brown to identify himself and explain what he was doing. One officer testified that Brown looked suspicious and that he had never seen him in the area before. The Court held the detention of Brown for purposes of requiring him to indentify himself was unconstitutional.

In *State v. Carpena,* 714 P.2d 674 (Utah 1986) (per curiam), a police officer, patrolling a neighborhood in which a number of burglaries had recently occurred, observed at 3:00 a.m. a slowly moving automobile with Arizona plates. The officer did not observe a traffic offense and had no report of a recent burglary. The car pulled into a driveway of a house where one of the occupants resided. The Utah Supreme Court held the investigatory stop unconstitutional because there were no objective facts on which to base a reasonable suspicion that the occupants of the car were involved in criminal activity.

Again in *State v. Swanigan,* 699 P.2d 718 (Utah 1985) (per curiam), the Utah Supreme Court held the stop unconstitutional. At approximately 1:40 a.m., a police officer stopped two persons walking down a street. The detention was based on a description by a fellow officer who had observed the two walking along the street at a late hour in an area where a recent burglary had been reported. The officer did not see the men at the scene of the crime nor did the officer see them engage in any unlawful activity.

■ Applying the foregoing authority, the totality of the circumstances preceding Officer Beesley's "seizure" of Trujillo do not support a reasonable suspicion that Trujillo was involved in criminal conduct. The initial decision to stop was based merely on the lateness of the hour and the high-crime factor in the area. The subsequent "nervous" conduct on the part of the trio when approached by Officer Beesley is consistent with innocent as well as with criminal behavior. Officer Beesley never bothered to inquire about the "suspicious" placement of the knapsack by the garbage can before subjecting Trujillo to an intrusive pat-down search. Nor did he ever articulate what concerned him about the knapsack. Officer Beesley could not recall receiving reports of any criminal activity in the area that morning. In fact, the only recent criminal activity in the neighborhood had been "car prowls," behavior inconsistent with the trio's peering in *store windows.* Officer Beesley did not observe the trio engage in any criminal conduct. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *State v. Swanigan,* 699 P.2d 718 (Utah 1985) (per curiam); *State v. Carpena,* 714 P.2d 674, 675 (Utah 1986). Trujillo and his companions progressed steadily south on State Street. They did not retrace their steps, stare repeatedly in the same store window "casing" the business, or hover repeatedly on the same street corner. There is nothing in the record to indicate it was unusual for people to be walking along State Street at a late hour. *See State v. Swanigan,* 699 P.2d 718, 719 (Utah 1985) (per curiam).

While Officer Beesley testified that the situation looked suspicious, he was unable to point to specific objective facts to support his "hunch." In short, there is nothing to distinguish Trujillo's activity from any other pedestrian in the area.[5]

Since Officer Beesley did not articulate reasonable objective facts for suspecting Trujillo had engaged in or was about to engage in criminal conduct, the balance between the public interest in crime prevention and Trujillo's right to personal security and privacy tilts to protect Trujillo from this unreasonable police interference. Officer Beesley's detention of Trujillo was unreasonable within the meaning of the fourth amendment. Inasmuch as we hold the seizure of Trujillo unconstitutional, Officer Beesley had no right to conduct a pat-down search of Trujillo and, therefore, the knife should have been suppressed on Trujillo's motion.

Reversed and remanded for proceedings consistent with this opinion.

JACKSON, J., concurs.

ORME, J., concurs in the result.

---

**5.** Officer Beesley's use of the word "shaking" when radioing dispatch and the national origin of Trujillo make it particularly important that Officer Beesley be able to articulate objective facts for the stop. *See supra* at p. ——.