STATE of Utah, Plaintiff and
Respondent,

v.

Jerome Wallace SMITH, Defendant
and Appellant.

No. 890008–CA.

Court of Appeals of Utah.

Oct. 17, 1989.

Frances M. Palacios and Joan C. Watt,
Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Barbara Bearnson,
Salt Lake City, for plaintiff and respondent.

OPINION

Before BENCH, BILLINGS, and
ORME, JJ.

BILLINGS, Judge:

Jerome Wallace Smith appeals his conviction of unlawful possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1989). Defendant claims the police officer's stop of his car was a violation of his fourth amendment rights against unreasonable searches and seizures. The trial court denied defendant's motion to suppress evidence seized as a result of the stop. Defendant entered into a conditional plea of no contest specifically preserving his right to appeal the trial court's denial of his motion to suppress. *See State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988) (upholding the validity of this type of conditional plea). We affirm defendant's conviction.

■ A fourth amendment analysis of police officer conduct is fact sensitive; thus, we review the facts in detail. *See, e.g., State v. Sierra,* 754 P.2d 972, 973 (Utah Ct.App.1988); *State v. Trujillo,* 739 P.2d 85, 86 (Utah Ct.App.1987). On September 20, 1988, Officer Smith of the Salt Lake City police department was patrolling the area near 20th South and State Street in Salt Lake City, a "high-crime" area where prostitution was a primary concern. At approximately midnight, Officer Smith was driving northbound on State Street in a marked police car. He noticed defendant's vehicle parked on the right side of the road with the front passenger window down. The officer observed an individual leaning into the car, but could not identify the sex of the individual. When this individual saw the marked police car, he or she stood up and walked toward the Alta Motel which was immediately adjacent to the vehicle. Officer Smith testified that he was alerted to the situation because the area, and particularly the Alta Motel, was known for prostitution and drug activity.

After the individual walked away, defendant's vehicle moved forward a few feet, remaining on the right-hand portion of the road, and then turned right into the driveway leading to the motel. Officer Smith testified that he followed defendant's vehicle because it turned into the motel driveway without signaling. The officer testified the reason he "stopped" the defendant was "no signal." The officer stated he did not remember whether he used his overhead lights or his spotlight to effectuate the stop. Defendant was ultimately cited for making a turn without signaling.

Officer Smith stopped his car behind defendant's car, blocking the car. Officer Smith then got out of his car and approached defendant. Defendant left his car and met Officer Smith between the parked vehicles. Officer Smith asked for defendant's identification and car registration. Defendant provided a driver's license but could not produce a car registration. Officer Smith ran an "outstanding warrants" check which revealed that defendant was in violation of his parole. Officer Smith informed defendant that he was under arrest and placed him in the patrol car.

At some point during the encounter Officer Smith called for a backup officer. When she arrived, Officer Smith asked her to do an inventory search of defendant's vehicle. During the search, the backup officer found two zip-lock baggies containing a white powdery substance later found to be heroin and several bundles later identified as cocaine. Defendant was then charged with one count of possession of a controlled substance and one count of possession with intent to distribute.

Defendant moved to suppress the drugs found during the inventory search and statements made to Officer Smith while defendant was en route to jail. Defendant argued the traffic stop was a pretext stop and thus all evidence obtained in the search should be suppressed. The State contended defendant voluntarily pulled into the parking lot and parked his car and thus no fourth amendment stop had occurred.

The trial court, focusing on defendant's initial parking of his car, ruled there was no stop because the defendant voluntarily pulled into the parking lot. Alternatively, the court found that even if a stop occurred, it was valid because the officer had observed defendant commit a traffic of-

fense. Accordingly, the trial court denied defendant's motion to suppress the drugs.[1]

Defendant later requested that the trial court reconsider its ruling on the motion to suppress in order that defendant could testify as to the events surrounding his pulling into the parking lot. Defense counsel claimed that she gave defendant bad advice in suggesting that the officer's testimony alone was sufficient to win the motion to suppress, and consequently advised defendant not to testify. The trial court denied the motion to reconsider.

■ We will not disturb the trial court's factual determinations underlying its decision to grant or deny a motion to suppress unless they are clearly erroneous. *See State v. Sierra*, 754 P.2d 972, 974 (Utah Ct.App.1988).

## TRAFFIC STOP

The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. In *State v. Sierra*, 754 P.2d 972 (Utah Ct.App.1988), this court stated:

> The fourth amendment applies to brief investigatory stops that fall short of official traditional arrests.... The stopping of an automobile and the consequent detention of its occupants constitute a "seizure" within the meaning of the fourth amendment, despite the fact that the purpose of the stop is limited and the resulting detention quite brief.

*Id.* at 975 (citations omitted).

The Utah Supreme Court has acknowledged three categories of constitutionally permissible encounters between police officers and the public.

> (1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion"

that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984)). *See also State v. Johnson*, 771 P.2d 326, 328 (Utah Ct.App.1989). The first category has been described as a "level one" or "voluntary" encounter where citizens respond to an officer's inquiries—outside of the contexts of suspicion or offense—and are free to leave any time they wish. Levels two and three permit law enforcement officials to stop or seize persons suspected of crimes under constitutionally defined standards.

■ In this case, the trial court, as one alternative basis to uphold the stop, determined that the encounter between Officer Smith and defendant was a level one encounter. In its analysis, the court focused upon defendant's initial decision to pull his car into the parking lot of the Alta Motel. We believe this inquiry was too narrow. Characterization of the encounter between Officer Smith and defendant must be determined by examining the totality of the circumstances.

Although the assessment of why defendant initially pulled into the parking lot is relevant, it is not dispositive. We also must consider whether defendant *"remain[ed]*, not in the spirit of cooperation with the officer's investigation, but because he believe[d] he [was] not free to leave...." *State v. Trujillo*, 739 P.2d 85, 87 (Utah Ct.App.1987) (emphasis added).

The Utah Supreme Court in *State v. Carpena*, 714 P.2d 674 (Utah 1986), found a similar show of authority, although not involving a traffic stop, to be a level two stop and thus subject to fourth amendment

---

1. The trial court granted defendant's motion to suppress statements he made in the police car because Officer Smith failed to give defendant his Miranda warnings. This ruling is not at issue on appeal.

standards.[2] In *Carpena*, an officer followed a vehicle and then turned on the red flashing lights on his patrol car. The vehicle being followed turned into the driveway of a house where one of the occupants of the car resided. Even though there is nothing in the opinion to indicate the officer blocked the defendant's egress, the court found that a level two stop had occurred.

■ It may be debatable whether defendant pulled into the parking lot and stopped because Officer Smith turned on either his overhead lights or his spot light, or did so voluntarily. However, under the totality of the circumstances, we find defendant's liberty was restrained and a seizure occurred at least when Officer Smith blocked defendant's car,[3] got out of his marked police car to talk to defendant late at night, asked for defendant's license and registration, issued defendant a traffic citation and required defendant to remain while he did a warrants check and called a backup officer.[4] *State v. Johnson*, 771 P.2d 326 (Utah Ct. App.1989) (seizure within fourth amendment where officer took driver's name and birthdate and expected her to wait while he ran a warrants check).

## WAS THE STOP A PRETEXT?

Stopping an automobile can be constitutionally justified on one of two alternative grounds.

> First, it [can] be based on specific, articulable facts which, together with rational inferences drawn from those facts, would lead a reasonable person to conclude [the defendant] had committed or was about to commit a crime. Second, the stop could be incident to a lawful citation for [a] traffic violation....

*State v. Sierra*, 754 P.2d 972, 975 (Utah Ct.App.1988) (citations omitted). Because we find that Officer Smith's stop of defendant was valid under the second prong of *Sierra*—a stop incident to a traffic violation—we need not reach the issue of whether Officer Smith had reasonable suspicion to believe that a more serious crime had been or was about to be committed.

■ Defendant argues that he did not violate a traffic ordinance by turning right from the far right lane on State Street into the parking lot of the motel without signaling for a right turn. We disagree. Under the facts defendant could have been cited under Utah Code Ann. § 41–6–69 (1988) [5] or

2. A stop which results from an officer actually observing a citizen commit a traffic violation would involve the officer having, at the least, probable cause to believe the citizen had committed a traffic offense. Thus, under the *Deitman* analysis, it would involve a level three stop. *See United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984) (setting out the three levels of police encounters).

3. Other jurisdictions have held that when an officer blocks a defendant's vehicle, a seizure within the meaning of the fourth amendment has occurred even though the original stop was not initiated by the officer. In *People v. Guy*, 121 Mich.App. 592, 329 N.W.2d 435 (1982), the Michigan Court of Appeals stated:

> Although the initial stop of the Continental in the driveway was not the result of Officer Hattis's actions, his partial blockage of the driveway and subsequent visit to the Continental clearly constituted a detention of the automobile and would be the equivalent of a police-initiated "stop".

*Id.* at 440.

The Ninth Circuit Court of Appeals in *United States v. Kerr*, 817 F.2d 1384 (9th Cir.1987), scrutinized a similar "blocking" encounter and found it was a seizure. The court, in finding a seizure had occurred, noted that it was not possible for the defendant to drive around the officer's patrol car: "[He] stopped and exited his car primarily in response to deputy Hendrick's official appearance and conduct rather than of his own volition." *Id.* at 1386. *See also United States v. Zukas*, 843 F.2d 179, 182 (5th Cir.1988).

4. Because we hold that Officer Smith's approach, investigation and issuance of a traffic citation was a stop subject to the fourth amendment, we need not reach the issue as to whether it was error for the trial judge to deny the defendant's "motion for reconsideration." The proffered testimony concerned only why the defendant pulled over and parked and our ruling eliminates the need for the testimony. Furthermore, under our previous decisions, it would certainly not be an abuse of discretion for a trial judge to deny a "motion for reconsideration." *See Salt Lake City Corp. v. James Constructors*, 761 P.2d 42 (Utah Ct.App.1988).

5. *Utah Code Ann.* § 41–6–69(1)(a) (1988) provides:

> A person may not turn a vehicle or move right or left upon a roadway or change lanes until the movement can be made with reason-

Salt Lake City Code § 12.44.130 (1988) [6] for failing to signal before making a turn.

Defendant further argues that even if he technically violated a traffic ordinance by not signaling before turning right, the officer used the "violation" merely as a "pretext" to probe for evidence of a more serious, drug-related crime.

A citizen can be stopped for a minor traffic violation without offending the fourth amendment "provided that the gravity of the traffic offense is such that any citizen would routinely be stopped for it if seen committing the offense by a traffic officer on a routine patrol." *Sierra*, 754 P.2d at 978 (quoting *State v. Holmes*, 256 So.2d 32, 34 (Fla.Dist.Ct.App.1971)).

Thus, we must determine whether "a hypothetical reasonable officer, in view of the totality of circumstances confronting him or her, would have stopped [defendant] to issue a [traffic citation]." *Sierra*, 754 P.2d at 978. Whether a fourth amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Sierra*, 754 P.2d at 977. *Cf. State v. Arroyo*, 770 P.2d 153, 155 (Utah Ct.App.1989) (stopping defendant for following too closely found to be a pretextual stop). Thus, in this case we focus on whether a reasonable officer, in light of all the attendant circumstances, would have stopped and cited defendant for failing to signal before turning right.

We agree with the trial judge that this is the type of clear cut traffic violation for which officers routinely stop citizens and issue citations. *Sierra*, 754 P.2d at 978 n. 3. *See Anderson v. State*, 444 P.2d 239 (Okla.Crim.App.1968) (stop not pretex-

tual where defendant executed an improper right hand turn).

The fact that Officer Smith's attention was initially drawn to the defendant's car because of what he considered suspicious activity in a high-crime area does not insulate the defendant from being stopped for a traffic violation. *State v. Tucker*, 286 Or. 485, 595 P.2d 1364, 1368–70 (1979). An officer is not required to ignore a traffic violation because it occurs in a high-crime area.

Having concluded that the stop was proper, we find the subsequent seizure valid and therefore affirm defendant's conviction.

BENCH and ORME, JJ., concur.

---

able safety and an appropriate signal has been given.
*Utah Code Ann.* § 41–6–1(37) (1988) defines roadway as:
  [T]hat portion of highway improved, designed, or ordinarily used for vehicular travel, exclusive of a sidewalk, berm, or shoulder, even though any of them are used by persons riding bicycles or other human-powered vehicles.

6. *Salt Lake City Code,* § 12.44.130 (1988) provides:

No person shall turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course, or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.