STATE of Utah, Plaintiff and Appellee,

v.

Randolph Paul STRUHS, Defendant and Appellant.

No. 960416–CA.

Court of Appeals of Utah.

June 19, 1997.

Scott L. Wiggins, Holmgren, Arnold & Wiggins, L.C., Salt Lake City, for Defendant and Appellant.

Jan Graham, Atty. Gen. and Barnard N. Madsen, Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

BILLINGS, Judge:

Defendant Randolph Paul Struhs appeals a conditional guilty plea of possession of a controlled substance, a third-degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a) (1996 & Supp.1996). Specifically, defendant claims the trial court erred in denying his motion to suppress. We agree and therefore reverse and remand.

## FACTS

At approximately 10:00 p.m. on March 3, 1995, Deputy Eileen Knighton, a deputy paramedic with the Davis County Sheriff's Office, was patrolling North Salt Lake in a marked sheriff's department vehicle with her partner. Deputy Knighton observed defendant's pickup truck traveling toward a construction area. As she continued to watch, Deputy Knighton observed the truck turn around and back up towards barricades and a sign that read "Road Closed." Once there, the truck was parked, and its headlights were turned off. The truck was approximately two hundred feet away from an area where a number of construction vehicles and equipment were located. Deputy Knighton never saw anyone leave the truck.

Although neither party suggests the truck had been driven illegally or was parked in an unlawful manner, Deputy Knighton stated she wondered why the pickup truck would enter an isolated area late at night when no one was working. She also was concerned as there had been numerous complaints of thefts in the area in the past. Deputy Knighton decided to "determine why the individual had stopped there" and proceeded to the defendant's location. In doing so, she turned off all the lights of the patrol vehicle and parked approximately a car length to a car length-and-a-half in front of defendant's truck in a posture she described as "nose-to-nose." She then activated her high-beam headlights and the white "takedown" light located in the light bar on the top of the vehicle. Deputy Knighton did not activate her red and blue flashing lights. She and her partner saw three individuals in the truck, two males and one female, who looked up toward the patrol vehicle.

Deputy Knighton then approached the vehicle and saw "numerous syringes, spoons and lighters in the car." Through further investigation it was later determined that one of the syringes contained cocaine, a controlled substance.

Defendant moved to suppress the evidence found in the truck claiming Deputy Knighton's stop was a level two encounter which was not supported by reasonable suspicion. The trial court denied defendant's motion to suppress. As a result, defendant entered a conditional guilty plea to possession of a controlled substance. Defendant appeals.[1]

## ANALYSIS

### I. Seizure of Defendant

▉ Defendant claims the trial court erred in denying his motion to suppress. "We review the factual findings underlying a trial court's ruling on a motion to suppress under

---

1. Defendant's original appeal was dismissed for lack of jurisdiction due to a lack of a final judgment. As a result, on May 23, 1996, the trial court signed a judgment sentencing defendant, inter alia, to a term of zero-to-five years in the Utah State Prison, which was stayed pending determination of defendant's new appeal.

a clearly erroneous standard." *State v. Patefield*, 927 P.2d 655, 657 (Utah.Ct.App.1996). We review the trial court's conclusions based on the totality of those facts for correctness. *See id.*

Utah courts have recognized that there are three levels of "constitutionally permissible encounters between police officers and the public." *State v. Smith*, 781 P.2d 879, 881 (Utah.Ct.App.1989).

"(1) [A]n officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an 'articulable suspicion' that the person has committed or is about to commit a crime; however, the 'detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop'; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed."

*Id.* (alteration in original) (quoting *State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984))).

■ The distinction between a level-one encounter (a purely consensual encounter) and a level-two encounter (a seizure requiring reasonable suspicion) depends on whether, through a show of physical force or authority, a person believes his freedom of movement is restrained. *See United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Important to the determination is "whether defendant 'remain[ed], not in the spirit of cooperation with the officer's investigation, but because he believ[ed] he [was] not free to leave.'" *Smith*, 781 P.2d at 881 (alterations in original) (citations omitted). Furthermore, "[t]he test for when the seizure occurred is objective," *State v. Ramirez*, 817

P.2d 774, 786 (Utah 1991), and a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877.

■ Defendant argues that when Deputy Knighton and her partner drove down the road with their lights off, stopped about one car length away from defendant's vehicle nose-to-nose, and turned on the police vehicle's high beam headlights and the truck's white "takedown" light, the deputies had seized defendant.

Defendant relies on *State v. Smith*, 781 P.2d 879 (Utah.Ct.App.1989), to support his claim that he was seized. In *Smith*, an officer was patrolling an area late at night in which prostitution was a high concern when he observed a person leaning into the passenger's window of a car parked on the side of the street. *Id.* at 880. That person then stood up and walked to a nearby motel. *Id.* After the person walked away, the driver of the vehicle moved forward a few feet, then without signaling, turned into the driveway leading to the motel. *Id.* The officer followed and stopped his car behind defendant's, blocking defendant's way out of the parking lot. Although the officer did not remember whether he used his overhead lights or spotlight to "effectuate the stop," he got out of his car and approached the driver. *Id.* Defendant got out of his car and met the officer between the cars, where the officer asked for defendant's identification and registration. *Id.* This court determined that the defendant had been seized. *See id.* at 882.

Defendant is correct that *Smith* cites with approval cases which have held that if an officer blocks a defendant's vehicle, a seizure has occurred. *See id.* at 882 n. 3.[2] Defen-

---

**2.** This court noted in *Smith*:

Other jurisdictions have held that when an officer blocks a defendant's vehicle, a seizure within the meaning of the fourth amendment has occurred even though the original stop was not initiated by the officer. In *People v. Guy*, [121 Mich.App. 592] 329 N.W.2d 435 ([Mich.Ct.App.] 1982), the Michigan Court of Appeals stated:

Although the initial stop of the Continental in the driveway was not the result of Officer Hattis's actions, his partial blockage of the driveway and subsequent visit to the Continental clearly constituted a detention of the automobile and would be the equivalent of a police-initiated "stop".

*Id.* 329 N.W.2d at 440.

dant claims that the officer's action of parking nose-to-nose about one car length away when his car was backed up against a barricade essentially "blocked defendant in" so he was unable to move. While defendant was not completely blocked in, the officer's positioning of her vehicle is certainly a factor that weighs in favor of finding under a totality of the circumstances that defendant was seized.

Equally important to our analysis is the officer's stealthy approach to defendant and her sudden activation of her headlights and white take-down lights.[3] In *State v. Davis*, 821 P.2d 9 (Utah.Ct.App.1991), this court determined that no seizure occurred when an officer drove up and merely stopped behind a parked car on the side of a road. *See id.* at 12. However, the court did conclude that after the officer had seen a beer on top of the car and a man urinating next to the car, the officer had seized the driver when he activated his overhead lights. *See id.*

We conclude that under the totality of the circumstances, defendant was seized. The time of night, the isolation of the location, the confrontational approach made by the officer, the officer parking nose-to-nose with defendant's vehicle, and the officer's sudden activation of her high-beam headlights and white take-down lights, support our conclusion. Therefore, for this level two encounter to be constitutional, it must be supported by reasonable suspicion.

## II. Reasonable Suspicion

In order to justify a seizure, a police officer must "point to specific, articulable facts which, together with rational inferences drawn from those facts, would lead a reasonable person to conclude [the defendant] had committed or was about to commit a crime."

The Ninth Circuit Court of Appeals in *United States v. Kerr*, 817 F.2d 1384 (9th Cir.1987), scrutinized a similar "blocking" encounter and found it was a seizure. The court, in finding a seizure had occurred, noted that it was not possible for the defendant to drive around the officer's patrol car: "[H]e stopped and exited his car primarily in response to deputy Hendrick's official appearance and conduct rather than of his own volition." *Id.* at 1386. *See also United States v. Zukas*, 843 F.2d 179, 182 (5th Cir.1988).

*State v. Trujillo*, 739 P.2d 85, 88 (Utah.Ct. App.1987). The assessment of whether reasonable suspicion exists is an objective standard based on the totality of the circumstances in which an "officer is entitled to assess the facts in light of [her] experience" because "a trained law enforcement officer may be able to perceive and articulate meaning in a given conduct which would be wholly innocent to the untrained observer." *Id.* at 88–89. Although the determination of whether reasonable suspicion exists is fact-intensive, the "determination of whether a specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewable nondeferentially for correctness." *State v. Pena*, 869 P.2d 932, 939 (Utah 1994).

The State claims the following facts give rise to reasonable suspicion: the defendant backing in towards a construction area and turning off his headlights at night when workers were not at the construction area and where the site had been the location of past thefts. Utah law does not support this claim.

In *State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (per curiam), an officer was patrolling an area late at night in which a number of burglaries had occurred. While doing so he saw a slow moving car with out-of-state license plates pull into a driveway. *Id.* Three individuals in the car got out at which time the officer seized the defendant. *Id.* The Utah Supreme Court ruled that there was no reasonable suspicion in such a circumstance, stating that such a suspicion could not be "based merely on the fact that a car with out-of-state license plates was moving slowly through a [high-crime] neighborhood late at night." *Id.*

*State v. Smith*, 781 P.2d 879, 882 n. 3 (Utah.Ct. App.1989) (alteration in original).

3. Under Utah law, non emergency vehicles would not be able to approach defendant and shine their lights on the defendant as the officer did in this case. *See* Utah Code Ann. § 41–6–129(d) (1993) ("Any lighted head lamps upon a parked vehicle shall be depressed or dimmed."); *id.* § 41–6–131 (stating requirements for spot lamps on vehicles and noting exception for emergency vehicles).

In *Trujillo*, 739 P.2d at 86, a police officer stopped three individuals, who were walking along slowly, looking in store windows, late at night, in a high-crime neighborhood, and who then acted nervous at their initial encounter with the officer. This court held that such conduct did not support a finding of reasonable suspicion. *See id.* at 89–90.

Based upon this authority, we conclude Deputy Knighton's stop of defendant was not supported by reasonable suspicion. In the face of any number of possible innocent explanations for defendant's behavior,[4] there were no specific, articulable objective facts that would lead a reasonable person to suspect that criminal conduct was occurring or was about to occur.

## CONCLUSION

Under the totality of circumstances presented in this case, we conclude Deputy Knighton's encounter with defendant amounted to a level two police-citizen encounter. We further conclude the officer did not have reasonable suspicion to justify the encounter. Accordingly, we reverse and remand to the trial court.

JACKSON and ORME, JJ., concur.

---

4. Counsel for the State acknowledged at oral argument the possibility of a couple parking in the isolated area to "make out." Other possibilities include a worker going to the site to retrieve a forgotten lunch pail or a law-abiding citizen going off to think or have a cigarette.