2000 UT App 323

**AMERICAN FORK CITY, Plaintiff and Appellee,**

v.

**Luis PENA–FLORES, Defendant and Appellant.**

No. 990901–CA.

Court of Appeals of Utah.

Nov. 16, 2000.

Margaret P. Lindsay, Aldrich, Neson, Weight & Esplin, Provo, for Appellant.

James Tucker Hansen and Bruce Murdock, Duval Hansen Witt & Moreley LLC, American Fork, for Appellee.

Before Judges GREENWOOD, BENCH, and BILLINGS.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant appeals his conviction of Interference with a Peace Officer in violation of Utah Code Ann. § 76–8–305, arguing that a person cannot interfere unless an officer is seeking to make a lawful arrest or detention. Defendant argues that either the gang members were not detained or, in the alternative, if they were detained, the detention was not lawful. Thus, defendant claims under either theory that he was not interfering with a lawful arrest or detention as required by the statute. We affirm.

## BACKGROUND [1]

¶ 2 On July 10, 1999, members of the Provo City Police Department were present in American Fork to help patrol the Steel Days carnival. Based on information received from street contacts and anonymous tips, police believed there was a possibility of gang activity. Additionally, police were aware of gang fights the previous night and a week earlier between an American Fork gang and a Payson gang. Based on reports, police believed that the Payson gang might be coming to American Fork to retaliate for the fight that occurred a week earlier.

¶ 3 During the carnival, officers dressed in clearly marked police uniforms observed known gang members congregating in the back corner of the carnival. Having identified the gang members, the officers proceeded to interview them and fill out interview cards for their files. During this process, police targeted certain individuals, whom they identified by tattoos and monikers, and escorted them to the front of the carnival, where the officers filled out interview cards and photographed them.

¶ 4 While police were interviewing the gang members, defendant, who was associating with them, but who was not known to police, told his friends that they did not have to talk with police or allow the police to take their pictures. The police officers told defendant to shut his mouth and step back from the situation. Defendant, however, persisted in telling his friends that they did not have to cooperate. At this point Officer Leavitt told defendant he had become "part of the party" and instructed him to come up to the front to be interviewed. Once defendant was taken to the front, Officer Leavitt asked him for some identification. Defendant told Officer Leavitt that he did not have to show him his identification. Officer Leavitt asked defendant if he had any identification with him. Defendant responded that he had some in his pocket. Officer Leavitt told defendant to show him the identification, but defendant refused. Officer Leavitt told defendant he was under arrest for failure to provide information to a police officer, handcuffed him, and removed the identification. After a bench trial, defendant was convicted of interfering with a peace officer. Defendant now appeals his conviction.

---

1. The relevant facts of this case are not in dispute.

ISSUES AND STANDARDS OF REVIEW

¶ 5 This case presents two questions: (1) Was the police encounter with gang members a detention, and (2) does Utah Code Ann. § 76–8–305 require a lawful arrest or detention in order for a defendant to be charged with interfering with an officer? In determining whether the encounter was a detention, we review the trial court's factual findings under a clearly erroneous standard and its "conclusions based on the totality of those facts for correctness." *State v. Struhs*, 940 P.2d 1225, 1227 (Utah Ct.App. 1997). A question of statutory interpretation presents a question of law which is reviewed for correctness. *See State v. Widdison*, 2000 UT App 185, ¶ 16, 4 P.3d 100; *State v. Westerman*, 945 P.2d 695, 696 (Utah Ct.App. 1997).

## ANALYSIS

### I. Was the Encounter a Level–Two Detention

¶ 6 Defendant argues that the encounter between police and gang members was merely a consensual level-one encounter, and thus he cannot be convicted of interfering with a peace officer because the statute requires either a level-two detention or a level-three arrest. Section 76–8–305 states:

A person is guilty of a class B misdemeanor if he has knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer *is seeking to effect a lawful arrest or detention* of that person or another and interferes with the arrest or detention by ... the arrested person's or another person's refusal to refrain from performing any act that would impede the arrest or detention.

Utah Code Ann. § 76–8–305(3) (1999) (emphasis added).

¶ 7 Defendant argues that police were merely gathering information from the gang members, and thus the encounter was a consensual level-one encounter. In a consensual level-one encounter, " ' "an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will." ' " *State v. Struhs*, 940 P.2d 1225, 1227 (Utah Ct.App.1997) (cita-

tions omitted). In a level-two encounter, " ' "an officer may seize a person if the officer has an 'articulable suspicion' that the person has committed or is about to commit a crime." ' " *Id.* (citations omitted). The difference between a consensual level-one encounter and a level-two detention is whether, "through a show of physical force or authority, a person believes his freedom of movement is restrained." *Id.* Furthermore, the determination of whether a person is detained focuses on " 'whether defendant "remain[ed], not in the spirit of cooperation with the officer's investigation, but because he believ[ed] he [was] not free to leave." ' " *Id.* (citations omitted).

¶ 8 In this case, the facts indicate that the police interview of the gang members was a level-two detention. Specifically, not only were police interviewing and photographing known gang members believed to have been involved in a fight the previous night, but also police were physically escorting these individuals from the back of the carnival to the front of the carnival. Officer Leavitt testified that the officers had detained the gang members for purposes of the investigation. Based on the facts and Officer Leavitt's testimony, we cannot say the trial court's conclusion that police had detained the gang members was clearly erroneous.

¶ 9 The State argues that the "seeking to effect" statutory language shows the Legislature intended the statute to cover a broader range of encounters than only detentions and arrests. However, because we conclude that the police did detain the gang members, we decline to address whether a person could be lawfully arrested for interfering with a level-one encounter.

### II. Does Section 76–8–305 Require a Lawful Detention

¶ 10 Next, defendant argues that the detention of the gang members was not supported by reasonable suspicion, and thus his conviction must be reversed because the statute requires a "lawful arrest or detention." Utah Code Ann. § 76–8–305 (1999). As defendant points out: "In order to justify a seizure, a police officer must 'point to specif-

ic, articulable facts which, together with rational inferences drawn from those facts, would lead a reasonable person to conclude [the defendant] had committed or was about to commit a crime.'" *State v. Struhs*, 940 P.2d 1225, 1228 (Utah Ct.App.1997) (alteration in original) (citation omitted).

¶ 11 Although police must have reasonable suspicion in order to make a legal detention, the use of "lawful" in section 76–8–305 does not automatically incorporate this standard in determining whether a person is guilty of interfering with a peace officer. So long as a police officer is acting within the scope of his or her authority and the detention or arrest has the indicia of being lawful, a person can be guilty of interfering with a peace officer even when the arrest or detention is later determined to be unlawful. As one court discussed: "The determination of whether an arrest is lawful is often difficult and should not be left to bystanders who may have only a limited knowledge of the relevant law and who may let their emotions control their judgment." *State v. Holeman*, 103 Wash.2d 426, 693 P.2d 89, 92 (1985).

¶ 12 Furthermore, the Utah Supreme Court has adopted a similar rule. In *State v. Gardiner*, 814 P.2d 568 (Utah 1991), defendant was convicted of both assaulting a police officer and interfering with an arrest. In that case, defendant claimed that the officer had illegally entered a private building to investigate suspected criminal activity. *See id.* at 575. Defendant claimed his initial assault against the officer when the officer entered the building and resistance after being informed that he was under arrest were justified because the underlying search by the officer was illegal. *See id.* The supreme court rejected this argument, stating: "The fact that his attempted search was later found to be unlawful does not divest [the officer] of his authority." *Id.* Similarly, in *State v. Griego*, 933 P.2d 1003 (Utah Ct.App. 1997), we assumed that "the police officers' warrantless entry into defendant's home and his seizure were illegal." *Id.* at 1008. Despite this illegality, we upheld defendant's conviction for interfering with an officer. *See id.* at 1009.

¶ 13 Although *Gardiner* and *Griego* could be distinguished on the ground that both involved a prior illegal police act which was superseded by a lawful arrest that formed the basis of the interference charge, such a distinction is against the clear weight of authority and the language in the statute. Other states that have examined this issue have consistently determined that illegal police conduct does not justify a defendant interfering with a detention or arrest. *See, e.g., Jurco v. State*, 825 P.2d 909, 911, 914 (Alaska Ct.App.1992) (defendant could not resist arrest even though disorderly conduct charge was invalid); *People v. Curtis*, 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33, 36–37 (1969) (duty to refrain from resisting unlawful arrest does not violate Fourth Amendment prohibition against unreasonable seizures); *Kessler v. Barowsky*, 129 Idaho 647, 931 P.2d 641, 650 (1997) (person cannot resist arrest if he knows he is being arrested by a police officer); *State v. Logan*, 8 Kan.App.2d 232, 654 P.2d 492, 495 (1982) (person cannot resist arrest by law enforcement even if he believes arrest is unlawful); *State v. Laughlin*, 281 Mont. 179, 933 P.2d 813, 814–15 (1997) (same); *Fugere v. State, Taxation and Revenue Dep't, Motor Vehicle Div.*, 120 N.M. 29, 897 P.2d 216, 223 (N.M.Ct.App.1995) (legal challenge to unlawful arrest can be raised after the arrest, rather than by resisting arrest); *State v. Castle*, 48 Or.App. 15, 616 P.2d 510, 512 (1980) (generally person cannot resist arrest even when person knows he is innocent); *State v. Mather*, 28 Wash.App. 700, 626 P.2d 44, 47 (1981) (right to be free from unreasonable search and seizure does not create right to react unreasonably to an illegal detention).

¶ 14 As the Wyoming Supreme Court noted: "The legislative intent to prohibit that which would interfere with law enforcement officers as they go about their duties is manifest. A person of common intelligence need not guess at the meaning and intended application of the statute." *Newton v. State*, 698 P.2d 1149, 1152 (Wyo.1985). We believe that it is equally clear that our Legislature, by enacting section 76–8–305, intended to protect law enforcement officers who seek to discharge their official duties.

¶ 15 "When construing a statute, our primary purpose is to give effect to the intent of the Legislature in light of the purpose the statute was meant to achieve." *State v. Widdison*, 2000 UT App 185, ¶ 21, 4 P.3d 100 (internal quotations and citations omitted). Additionally, " 'we presume that the Legislature used each term advisedly, and we give effect to each term according to its ordinary and accepted meaning.' " *Id.* (citation omitted).

¶ 16 Defendant's argument that the statute requires a lawful arrest or detention reads out of the statute the phrase "seeking to effect." Given our prior case law and the Legislature's inclusion of the "seeking to effect" language, we believe that the statute is intended to protect law enforcement officers who are either making a lawful detention or arrest, or who are seeking to effect a lawful detention or arrest. An officer can seek to effect a lawful arrest or detention when he or she is acting within the scope of his or her authority and the detention or arrest has the indicia of being lawful.

¶ 17 In this case, the police officers were wearing clearly marked police uniforms and were investigating known gang members and people associating with these gang members to gather information about two previous fights that had recently occurred. Additionally, the police officers had information that one gang might be attempting to retaliate against another gang for one of the previous fights. To this end, police officers briefly detained these individuals to gather information and update their files. Whether the police had reasonable suspicion to justify this detention is immaterial to defendant's conviction, because defendant was in no position to determine on his own whether the officers' actions were lawful.

## CONCLUSION

¶ 18 Based on the evidence presented, the trial court correctly determined that police had seized the gang members at the carnival. Furthermore, the police wore uniforms which clearly identified them as law enforcement officers and they were acting in a manner that had all the indicia of a lawful police detention. Therefore, defendant's interfer-ence with the police investigation was sufficient to support a conviction under section 76–8–305(3). Accordingly, we affirm defendant's conviction.

¶ 19 WE CONCUR: RUSSELL W. BENCH, Judge, JUDITH M. BILLINGS, Judge.