2002 UT App 165

**STATE of Utah, Plaintiff and Appellant,**

v.

**Alan Kay JUSTESEN, Defendant and Appellee.**

**No. 20010315–CA.**

Court of Appeals of Utah.

May 16, 2002.

Mark L. Shurtleff, Marian Decker, Assistant Attorney General, Salt Lake City, for Appellant.

David M. Allred, Castle Dale, and Sharon L. Preston, Salt Lake City, for Appellee.

Before Judges BILLINGS, BENCH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 The State appeals from an order granting Alan Justesen's (Justesen) Motion to Suppress. We reverse and remand.

## BACKGROUND

¶ 2 On June 17, 2000, at approximately 12:45 a.m., Sergeant Tom Stefanoff (Stefanoff), of the Carbon County Sheriff's Department, was patrolling a desolate stretch of Airport Road one mile east of the airport in Carbon County, when he came upon a white 1991 Ford minivan. The minivan had no lights on and Stefanoff was uncertain if the minivan was occupied. As such, Stefanoff decided to check and see if the minivan was broken down, abandoned, or if the occupants in the minivan, assuming there were occupants, needed assistance.

¶ 3 Stefanoff pulled off the road, and, with his patrol vehicle's headlights on, ultimately stopped six to eight feet behind the minivan. The only illumination in the area came from Stefanoff's headlights. Accordingly, after stopping his vehicle, Stefanoff activated his "take-down lights"[1] "to illuminate the area" for safety reasons. Stefanoff did not activate his vehicle's high beam headlights, nor the red and blue flashing lights located on the light bar.

¶ 4 Stefanoff exited his vehicle and approached the minivan. He noticed the minivan's brake lights illuminate as he proceeded to the driver's side of the minivan. As he continued toward the front of the minivan, Stefanoff saw Justesen sitting in the driver's seat with the keys in the ignition. The minivan was not running.

¶ 5 Stefanoff spoke with Justesen through the driver's side window, which was already down, and asked for Justesen's identification. Justesen identified himself as "Steve Templeton" and told Stefanoff that he had no identification. During the encounter, Stefanoff smelled the odor of alcohol emanating from Justesen. Accordingly, Stefanoff asked Justesen if he had been drinking. Justesen admitted to having had a few drinks. At that point, Stefanoff asked Justesen to exit the minivan and perform several field sobriety tests. Stefanoff subsequently arrested Justesen for driving under the influence. A search of Justesen's vehicle, incident to arrest, uncovered Justesen's wallet containing his identification, revealing his real name.

¶ 6 Justesen was charged with driving under the influence of alcohol, driving on a denied license, and providing false information to a police officer. Justesen filed a motion to suppress, arguing that the encounter was a level two stop not supported by a reasonable suspicion that Justesen had committed or was about to commit a crime. The trial court granted the motion, suppressing the conversation between Stefanoff and Justesen, as well as Stefanoff's observations, both of which led to the arrest. The State appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 The State argues the trial court erred by concluding that the encounter was a level two stop, and therefore, in granting Justesen's Motion to Suppress. We review a trial court's conclusions of law for correctness, "with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Veteto*, 2000 UT 62,¶ 8, 6 P.3d 1133.

## ANALYSIS

¶ 8 The trial court concluded that the encounter between Stefanoff and Justesen was a level two stop because Stefanoff activated his "take down lights" after he pulled up behind Justesen's minivan. The State argues that the encounter between Stefanoff and Justesen was a voluntary level one en-

---

1. The "take-down" lights are two white spotlights located on the light bar on top of the patrol vehicle.

counter that did not rise to a level two stop simply because Stefanoff activated his "take down lights." We agree.

¶ 9 It is well-established that there are three "levels of constitutionally permissible encounters between law enforcement officers and the public." *Salt Lake City v. Ray,* 2000 UT App 55, ¶ 10, 998 P.2d 274. Of significance to the present matter are the first two types of encounters.

> (1) [A]n officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; [and] (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop . . . ."

*Id.* (quoting *State v. Deitman,* 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (citations omitted)).

¶ 10 Here, the trial court concluded that the encounter was a level two stop that was not supported by an " 'articulable suspicion' that [Justesen] had committed or was about to commit a crime." The trial court explained that

> [a]lthough there were no physical obstructions in front of the defendant's vehicle that would have prevented him from leaving, the take-down lights were extremely bright and were on the top of the vehicle, and given the time of night and the isolated location, the court finds that a reasonable person would think that the activation of the take-down lights meant that they were intended as a display of authority and that he was not free to leave.

The trial court did not cite to any Utah authority to support its conclusion that Stefanoff's use of "take-down lights" constituted a level two stop that required "reasonable suspicion." We surmise that the trial court's decision may have been influenced by this court's decision in *State v. Struhs,* 940 P.2d 1225 (Utah Ct.App.1997). However, we believe that this case is readily distinguishable from *Struhs.*

¶ 11 In *Struhs,* a sheriff's deputy observed a vehicle "traveling toward a construction area" at 10:00 p.m. *Id.* at 1226. The deputy watched the vehicle turn around and "back up towards barricades and a sign that read 'Road Closed,' " at which time the driver turned off the vehicle's ignition and headlights. *Id.* The deputy continued to observe the vehicle. At no time did the deputy see anyone exit the vehicle, and therefore, the deputy became curious as to why the vehicle's driver decided to stop at this remote location at this time of night. *See id.*

¶ 12 The deputy then

> turned off all the lights of the patrol vehicle and parked approximately a car length to a car length-and-a-half in front of defendant's [vehicle] in a posture [the deputy] described as a "nose to nose." [The deputy] then activated her high-beam headlights and the white "takedown" light located in the light bar on the top of the vehicle.

*Id.* After approaching the vehicle, the deputy discovered drug paraphernalia, and a subsequent search of the vehicle uncovered cocaine. *See id.* The deputy arrested the defendant, who later filed a motion to suppress the evidence found in the vehicle, claiming that the encounter was a level two stop that was not supported by "reasonable suspicion." *Id.* The trial court denied the defendant's motion.

¶ 13 We reversed the trial court, concluding that

> under the totality of the circumstances, [the] defendant was seized. The time of night, the isolation of the location, *the confrontational approach made by the officer,* the officer parking *nose-to-nose with [the] defendant's vehicle,* and the officer's *sudden* activation of her high-beam headlights and white take-down lights, support our conclusion.

*Id.* at 1227 (emphasis added).

¶ 14 In the present matter, the totality of circumstances surrounding the encounter between Stefanoff and Justesen do not support a level two stop. Although the encounter occurred at night in an isolated area, the factual similarities between the present

matter and *Struhs* end there. The confrontational and stealthy factors present in *Struhs* are not present in this case. Stefanoff did not approach Justesen's vehicle in a stealthy manner, and was not trying to surprise the occupants, nor was he trying to "catch" them at something. Further, Stefanoff had not observed the minivan for a prolonged period of time under the cloak of darkness, only then becoming suspicious of the occupants' pattern of activities.

¶ 15 Instead, Stefanoff came upon the minivan while on patrol, and, with his headlights on, approached Justesen's minivan. Stefanoff did not park "nose-to-nose" with Justesen's vehicle, but parked behind it. At that time, Stefanoff activated his take-down lights. Our review of the record leads us to conclude that Stefanoff used the take-down lights not as a show of authority, but to illuminate the area. In sum, we view this encounter as no different than an officer pulling behind a vehicle parked on the side of the road in the daylight hours. In both instances, the encounters are voluntary, and the motorist is free to leave. *See* 4 Wayne R. LaFave, Search and Seizure § 9.3(a) (3d ed.1996) (stating "if an officer merely walks up to a person ... who is seated in a vehicle located in a public place ... and puts a question to him, this alone does not constitute a seizure") (footnote and citations omitted). To decide otherwise would force an officer to choose between personal safety, in this case by simply illuminating the area, or not stopping to render assistance to a stranded motorist in an isolated area at night.

## CONCLUSION

¶ 16 The trial court's conclusion that Stefanoff's activation of his overhead lights alone was sufficient to escalate the encounter to a level two stop, requiring a reasonable suspicion of criminal or potential criminal activity, was in error. We therefore reverse the trial court's decision and remand for proceedings consistent with our decision.

¶ 17 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and RUSSELL W. BENCH, Judge.