2006 UT App 419

STATE of Utah, Plaintiff and Appellee,

v.

Val George TEHERO, Defendant and Appellant.

No. 20050586–CA.

Court of Appeals of Utah.

Oct. 13, 2006.

Randall W. Richards and Dee W. Smith, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Attorney General, and Brett J. DelPorto, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## MEMORANDUM DECISION

McHUGH, Judge:

¶ 1 Defendant Val George Tehero appeals the district court's denial of his motion to suppress methamphetamine found on his person during a search incident to arrest. We affirm.

¶ 2 Because "[a] fourth amendment analysis of police officer conduct is fact sensitive[,] ... we review the facts in detail." *State v. Smith*, 781 P.2d 879, 880 (Utah Ct.App.1989). Around 10:30 p.m. on August 31, 2004, Officer Kenneth Hammond was on patrol in his marked police vehicle when he saw Tehero commit what Officer Hammond thought was the statutory violation of riding a bicycle without proper lighting.[1] Officer Hammond pulled into a driveway about fifteen feet behind Tehero. Officer Hammond stopped his vehicle but did not activate the car's overhead lights or siren. Tehero noticed Officer Hammond's car, stopped riding his bike, and looked back at Officer Hammond, who began walking toward him.

¶ 3 Officer Hammond then asked Tehero if he had any identification. Tehero responded that he did not, but gave the officer his name when asked. Still standing next to Tehero, Officer Hammond ran a warrants check on Tehero using a portable radio that he carried on his waist. Officer Hammond testified that such checks usually take between twenty seconds and two minutes. The warrants check revealed an outstanding warrant, and Officer Hammond placed Tehero in handcuffs. A search incident to the arrest revealed a baggie containing methamphetamine. Officer Hammond testified that the entire encounter took less than three minutes and that Tehero remained seated on his bicycle until he was placed in handcuffs.

¶ 4 Tehero was charged with possession of a controlled substance, a third-degree felony. He filed a motion to suppress, claiming that the drugs had been seized during an illegal search. The trial court held a hearing on the motion, after which it issued oral findings of fact and conclusions of law. The court denied the motion to suppress, finding that the initial encounter between Officer Hammond and Tehero was voluntary.

¶ 5 Tehero entered a conditional plea of guilty to the charge, reserving the right to appeal the denial of the motion to suppress. We review a ruling on a motion to suppress for correctness, without deference to the district court's application of the law to the facts. *See State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

¶ 6 The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Constitution does not forbid all searches and seizures, only unreasonable ones. *See State v. Lafond*, 2003 UT App 101, ¶ 11, 68 P.3d 1043 (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Under our case law, there are three permissible levels of police stops:

(1) An officer may approach a citizen at any time and pose questions so long as the citizen is not detained against his will; (2)

---

1. Officer Hammond testified on cross-examination that he was incorrect in his initial belief that Tehero, who was riding his bicycle on the sidewalk, was required by statute to have lighting on his bicycle when he left the sidewalk and crossed an intersection.

an officer may seize a person if the officer has an articulable suspicion that the person has committed or is about to commit a crime ...; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense had been committed or is being committed.

*State v. Markland,* 2005 UT 26, ¶ 10 n. 1, 112 P.3d 507 (omission in original) (quotations and citation omitted).

¶ 7 A level one encounter is a voluntary encounter during which a citizen may choose to answer a police officer's questions but is free to leave at any time during the questioning. *See Salt Lake City v. Ray,* 2000 UT App 55, ¶ 11, 998 P.2d 274. " 'As long as the person remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.' " *Id.* (quoting *State v. Jackson,* 805 P.2d 765, 767 (Utah Ct.App.1990)) (additional quotations and citation omitted). In contrast, a person is seized in a level two stop, and thus afforded the protections of the Fourth Amendment, "when the officer by means of physical force or show of authority has in some way restrained the liberty of [the] person." *Id.* (quotations and citations omitted). A level one encounter becomes a level two seizure when "a reasonable person, in view of all the circumstances, would believe he or she is not free to leave. This is true even if the purpose of the stop is limited and the resulting detention brief." *Id.* (quotations and citations omitted). Circumstances demonstrating that a level two stop is underway include the presence of more than one officer, the display of an officer's weapon, physical touching of the person, use of commanding language or tone of voice, and retaining a person's identification or other documentation. *See id.*

¶ 8 Tehero contends that he was seized in a level two stop when Officer Hammond approached him, asked him his name, and ran a warrants check. We disagree. Viewing the totality of the circumstances in this case, we conclude that the encounter between Tehero and Officer Hammond was a voluntary, level one stop. None of the circumstances indicative of a level two stop is present in this case. Officer Hammond testified, and the district court found, that Tehero voluntarily stopped his bicycle when he saw the police vehicle. Officer Hammond was the only officer on the scene, and Officer Hammond did not display his weapon or touch Tehero. Nor did Officer Hammond demonstrate any show of force, such as using a commanding tone of voice, wielding his gun, flashing his lights, or activating his siren. Moreover, Officer Hammond could not have retained Tehero's identification because Tehero carried none with him.

¶ 9 We note, however, that in *State v. Johnson,* 771 P.2d 326 (Utah Ct.App.1989), *rev'd on other grounds,* 805 P.2d 761 (Utah 1991), this court held that a police officer seized a defendant when the officer ran a warrants check using only her name and birthday, and without taking or retaining the defendant's identification. *See id.* at 328. The Utah Supreme Court upheld that conclusion. *See* 805 P.2d at 763 ("Taking into account the totality of the circumstances, the court of appeals was correct in finding that defendant was reasonably justified in her belief that she was not free to go." (quotations omitted)).

¶ 10 The facts of that case, though, are easily distinguished from those present here. In *Johnson,* the defendant was a passenger in a vehicle whose driver was stopped for a traffic violation. *See* 771 P.2d at 326. Furthermore, the officer in *Johnson* told the defendant to wait in the vehicle while he conducted a warrants check on the defendant and the driver. *See id.* at 327. While the defendant in *Johnson* reasonably felt that she could not leave because she had been ordered not to and because the driver was seized by the initial traffic stop, a reasonable person in Tehero's situation would have believed he was free to continue on his way when he saw Officer Hammond's police vehicle. Therefore, the district court did not err

in denying Tehero's motion to suppress.[2]

¶ 11 Affirmed.

¶ 12 WE CONCUR: JAMES Z. DAVIS, Judge, and Gregory K. ORME, Judge.

---

2. Because of our disposition of this case, we need not reach the State's alternative theory that assuming *arguendo* that the stop was a seizure, it was justified by a violation of statutory provisions governing bicycle safety. It is nonetheless important to note that Officer Hammond testified that he and Tehero did not have a conversation about what Officer Hammond believed was the reason for the stop, i.e., the lack of lighting on Tehero's bicycle. Thus, even if Officer Hammond initially thought that the encounter was a level two stop justified by violation of a statute, Officer Hammond's subjective view of the nature of the stop is not pertinent to our analysis when his view was not communicated to Tehero. *See* *United States v. Mendenhall*, 446 U.S. 544, 554 n. 6, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.) ("The subjective intention ... is irrelevant except insofar as that may have been conveyed to the respondent."); *State v. Patefield*, 927 P.2d 655, 659 (Utah Ct.App.1996) ("[R]egardless of the circumstances, '[t]he test for when [a] seizure occur[s] is objective and depends on when the person reasonably feels detained, not on when the police officer thinks the person is no longer free to leave.'" (second, third, and fourth alterations in original) (quoting *State v. Ramirez*, 817 P.2d 774, 786 (Utah 1991))).